116 N.J. Super. 252 (1971)
282 A.2d 44
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH INFANTE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1971.
Decided October 4, 1971.
*253 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Elmer J. Herrmann argued the cause for appellant (Messrs Herrmann and Blasi, attorneys).
Mr. Richard F. Thayer, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Defendant was found guilty by a jury of bookmaking contrary to N.J.S.A. 2A:112-3. He was sentenced to a term of one to two years in New Jersey State Prison and fined $1000. He timely appeals.
Defendant contends that (1) the trial court erred in failing to order the State to produce the name of a man who assisted the police by calling a certain telephone number, in that disclosure of this person's identity was essential to the fair determination of the case, and (2) the State's proofs failed to establish a prima facie case and the trial court therefore erred in submitting the case to the jury (not raised below).
In June 1969 Detective John Leck of the State Police had been assigned to conduct an investigation of gambling activities in and about Penn Station in Newark. As a result *254 of information he had received the detective focused his attention on the Penn Plaza Transfer Company. (Although not brought out at the trial, Detective Leck had received evidence from a "reliable informant," whose name was not disclosed, that defendant was taking bets over telephone number 622-6280, the number of the Transfer Company located at Penn Station.)
On June 2, 1969 Detective Leck was told at the Station's information desk that the Transfer Company was located at the baggage room. He stationed himself in a phone booth located opposite the baggage room and three times called the above number listed for Penn Plaza Transfer Company. Each time, as the detective noted, the phone in the baggage room rang and he hung up before anyone could answer.
On June 4 Detective Leck returned with a man whose identity was not disclosed. With the receiver held so that the detective could listen, the other man dialed 622-6280. When the phone was answered the caller asked, "Is this Joe?" He received an affirmative response. The listening detective heard this other man place a $10 bet with "Joe." This fact was within the detective's personal knowledge and not the result of information conveyed to him.
On the following day Detective Leck returned to the booth with a second man. He watched this man begin to dial the number 622-6280 and then walked down the hall to a window of the baggage room. He heard the phone ring and saw defendant pick up the receiver. Detective Leck stayed at that location and observed the defendant answer the phone four times in a ten-minute period. He then went back down the hallway to survey the front of the room. He observed a man enter the baggage room and heard him ask for "Joe." This man was taken to defendant, who greeted him. Detective Leck saw him give defendant a slip of paper and some money.
At approximately 1:30 P.M. on June 11, 1969 a Detective Kitzler, along with other members of the State Police, went to the baggage room to execute a search warrant issued by *255 Judge Kingfield. (The regularity of that warrant, the basis for its issuance and the execution of the warrant are not challenged.) The police entered the baggage room through the large window utilized for claiming packages. They crossed the large room and proceeded to an adjoining office. Detective Kitzler observed defendant in the office talking on the telephone. At that precise time defendant was inquiring of the party on the other end, "Have I ever taken any action from you before?" Defendant then saw the detective and, after being shown the detective's credentials, he hung up. The number of the phone on which defendant was talking was 622-6280. Though the phone was of the locked type, defendant was then in possession of a key for the lock. In defendant's hand were a pen and a quantity of small pieces of paper with a date stamped on them and the word "parlance." They were dated May 15.
Five slips of paper were found in a wastepaper basket in the baggage room. These were identified at trial as horse betting slips; they were all dated May 15, 1969.
Three Armstrong scratch sheets were found in the office. These sheets were for the days of June 10 and June 11. Defendant had $292 in cash on his person.
At 1:36 P.M. on June 11, while the police were there, the phone rang and Detective Kitzler answered it. According to the detective's testimony, the caller inquired, "Joe Infante?" Kitzler responded, "Yes, go ahead." Then followed, "This is Larry, 7 Monmouth, Atol's Son, $10 across." At 1:41 P.M. on the same day another call was received for Joe Infante. The caller said, "This is Remo, 2nd at Monmouth, Cousin Weak Eyes; 2nd at Delaware, Bowe Shane; 6th at Monmouth, Box V Compass, $2, $4 reverse, round robin." "Remo" called with another bet at 1:45 P.M.
There was further police testimony that at about 2 P.M. there was another call for "Joe Infante," but the caller apparently recognized that it was not defendant who answered the phone and hung up. This was repeated twice. At 2:35 P.M. a "Tommy" called and asked what was wrong. Detective *256 Kitzler told him that the State Police had just "Knocked off" the baggage room. "Tommy" responded "Gee, I will call the guy up and have Joe out on bail."
Joseph Kinnsey testified for the defense. He managed the Transfer Company. He stated that telephone number 622-6280 was the business number of the company and that the phone had had a lock on it for the past 20 years. There were six or seven keys to that lock given out to various persons in the station. There was even a key in the drawer of the desk. The phone was quite busy. The other phones in the baggage room were Penn Central phones and were not kept locked.
Defendant also testified. He denied taking bets and denied all knowledge of the articles found in the baggage room. He testified that the slips found in his possession were baggage slips and old baggage slips used for scrap paper.
The defense objected to the use of any evidence obtained through the use of an undisclosed informant. No motion for a judgment of acquittal was ever made on behalf of defendant.
The first question is whether the trial court erred in refusing to order the State to disclose the identity of those unidentified persons who had aided the police.
Evidence Rule 36 provides:
A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.
Thus, in New Jersey, as in other jurisdictions, the State has the privilege to withhold from disclosure the identity of persons who furnish information to police officers concerning *257 the commission of crimes. See generally, 8 Wigmore, Evidence (McNaughton rev. 1961) § 2374 at 761. See also Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the rule embodied in Rule 36 was established.
The rationale of this rule is obvious. The informer network is a valuable and often indispensable tool in police work. See Note, 37 Geo. Wash. L. Rev. 639 (1969). Such communications must be encouraged. Thus, when an informant demands anonymity to avoid both retribution and social ridicule, it should be afforded. However, such a privilege cannot be absolute. The identity of the informer must be disclosed when it is necessary and relevant to a fair defense. State v. Oliver, 50 N.J. 39, 42 (1967).
In the instant case defendant contends that the factual complex compels such a disclosure. Initially it must be established whether the individual who aided Detective Leck on June 4 is within the purview of Evidence Rule 36. Although no evidence of "informing" was introduced at the trial, it can be inferred that this individual was supplying the police with information concerning gambling activities. Moreover, it is reasonable to infer that this individual had been the one who had previously placed bets with defendant. The question in this case is whether his participation on June 4 required disclosure of his identity.
It has been stated that disclosure is compelled where the informant appears to be a material witness on a basic issue of the trial. State v. Dolce, 41 N.J. 422, 435-436 (1964). Thus, where the informant was a participant, accessory or witness to the crime itself, disclosure is normally required. State v. Oliver, 50 N.J. 39 (1967).
In Oliver an unidentified informant accompanied an undercover agent to the tavern in which Oliver was allegedly engaged in bookmaking. The informant was a regular patron, and thus his presence was utilized to allay suspicions which might otherwise be aroused. The court held that the identity of the informant need not be disclosed. It stated:
*258 Here the informer played no part whatever in the criminal event. He did not bet, or induce defendant to accept a bet from anyone. Nor did the State attempt to get into the record of the trial anything the informer may have seen or said. [at 42]
There, the informant's participation was limited to a mere witnessing of the crime. The defense was unable to demonstrate "that the informer's testimony was necessary for a fair determination of the issues in the case." Ibid.
The participation of the informant is basically a factor which the trial court must take into consideration in determining whether disclosure is required for the structuring of a fair defense. Nutter v. State, 8 Md. App. 635, 262 A.2d 80 (Ct. App. 1970). It has been aptly stated:
Thus, where the informer is an active participant in the alleged activities disclosed by him, his actions and identity can become part of the res gestae and concealment of his identity might hamper the accused in making his defense by depriving him of the testimony of a material witness. [Donigan and Fisher, The Evidence Handbook, § 7 at 214 (1965)]
Where the courts have required such disclosure, the factual complex generally involves situations where the informant was an actual participant in the precise criminal act for which the accused is being charged. See, e.g., State v. Godwin, 106 Ariz, 252, 475 P.2d 236 (Sup. Ct. 1970) (informant was seated with an officer when defendant handed him a lighted marihuana cigarette, and the sole direct witness was the officer); Eleazer v. Superior Court, 1 Cal.3d 847, 83 Cal. Rptr. 586, 464 P.2d 42 (Sup. Ct. 1970), (informant, observed by police, purchased the drugs from defendant); State v. Davis, 450 S.W.2d 168 (Mo. Sup. Ct. 1970) (informant supplied defendant with drugs, introduced him to police-purchaser, and witnessed the transaction).
In the instant case the participation of the informant did not become part of the res gestae of the crime. Nor did it play any important part in the conviction, in view of the *259 abundance of evidence inculpatory of defendant. It was never alleged that this informant placed a bet with defendant when he called on June 4. We find it unnecessary to determine whether the State would have been required to divulge the identity of the informant had the indictment encompassed the occurrence of June 4. Detective Leck testified that he did not know who received the bet referred to above. The informant's participation was not in the criminal activity for which defendant was convicted, but rather in the investigation leading up to the surveillance. The informant's testimony, moreover, would in no way exculpate defendant but could only inculpate him further. Thus, defendant was not materially prejudiced by lack of the name of the informant.
The trial judge did not abuse his discretion in refusing to compel disclosure. As stated in Oliver:
A policy-decision must be made and it must rest upon probabilities. In those terms the risk of loss to defendants is pure conjecture, while the loss to society in its efforts to cope with crime would be real and substantial. The balance contemplated in Roviaro must be struck in favor of law and order. [50 N.J. at 48.]
The trial court did not err in submitting the case to the jury.
No motion for a judgment of acquittal was ever made by defendant. Moreover, the evidence produced by the State was sufficient for the jury to find defendant guilty beyond a reasonable doubt. State v. Reyes, 50 N.J. 454 (1967).
The judgment of conviction is affirmed.