71 N.J. 373 (1976)
365 A.2d 914
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PRESTON MILLIGAN, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued March 23, 1976.
Decided October 7, 1976.
*377 Ms. Helen E. Szabo, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Richard J. Engelhardt, Deputy Attorney General, of counsel and on the brief).
Mr. Lloyd N. Simon, Asst. Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by PASHMAN, J.
In this case the Court once again considers the limits of the government's privilege to protect the anonymity of police informers. This issue is presented in the context of a prosecution for unlawful possession and distribution *378 of heroin. The informer, whose identity the State wishes to conceal, introduced a narcotics agent to defendant, accompanied the agent and defendant to the place where the sale was transacted, but did not actually participate in the sale.

I
In the fall of 1972 Harry Roberson, an undercover New Jersey State Trooper, was involved in a narcotics investigation conducted in Camden County. Evidence is found in the record to establish the following facts. On November 10, 1972, after meeting with his immediate superior, Trooper Roberson accompanied a police informer to the corner of Pleasant and Darous Avenues in Pennsauken Township. There, the informer introduced him to defendant Preston Milligan. After a conversation about drugs ensued and Milligan stated that he had some "good stuff for sale" at $8 per bag, the agent agreed to purchase $88 worth of heroin from defendant. Although the informer was present throughout the meeting and did participate in the general discussion, he did not negotiate the sale. The meeting lasted about ten minutes.
Roberson, Milligan and the informer drove to defendant's house on Pleasant Avenue in Pennsauken Township. Upon their arrival, the trio entered the house and walked into the living room. The informer then left the others alone in the living room and went to the bathroom. While the informer was out of the room, defendant produced 11 glassine envelopes from a stack of bags lying on the living room table. When defendant asked for the money, the trooper began to haggle about the price. He told defendant that he did not have the full $88 with him, but would be willing to pay $72 for the 11 bags. Milligan agreed and took $72 from Roberson in exchange for 11 bags which were later tested and shown to contain heroin. At trial, Roberson explained that he had bargained with defendant because heroin addicts *379 are usually short of money; it would have seemed a "little strange" for him not to "hassle" about the price.
No other person was in the living room during the sale. The informer neither witnessed nor participated in the transaction, though he did reenter the room "a few seconds after the transaction had taken place." Roberson, defendant and the informer then departed; Roberson drove the defendant back to the corner where they had first met.
Nearly six months after this incident allegedly occurred, defendant was arrested for possession and distribution of heroin in violation of N.J.S.A. 24:21-20(a)(1) and 24: 21-19(a)(1), respectively.[1] Prior to trial, defendant moved for disclosure of the name of the informer. Following a preliminary hearing on the matter at which Trooper Roberson testified, the trial judge denied the motion.
At trial, defendant testified on his own behalf. He said that because he was neither working nor attending school when the transaction in question occurred, he was unable to recall where he was or what he was doing on November 10, 1972, the date of the alleged sale. But he did deny that he had ever seen the trooper before the trial and also testified that he had not sold narcotics to anyone on November 10, 1972. The jury found defendant guilty of both offenses and he was sentenced to concurrent indeterminate terms at the Youth Correctional Center at Yardville.[2]
*380 On appeal, defendant argued that (1) the trial judge erred in denying defendant's motion for disclosure of the informant's name, (2) the conviction for possession of heroin merged with the conviction for distribution of the same heroin and (3) the sentences imposed were manifestly excessive. In an unreported per curiam opinion, the Appellate Division reversed, and ruled that because "the informer was an active participant in the transaction and a material witness on the issue of defendant's guilt," failure to require disclosure of his identity was reversible error. The court found it unnecessary to consider the other two grounds of appeal.
This Court granted the State's petition for certification. 68 N.J. 481 (1975). We now reverse.

II
At common law there existed a governmental privilege to withhold the identity of informants who assist law enforcement officials. See generally, Donnelly, "Judicial Control of Informants," 60 Yale L.J. 1091 (1951); 8 Wigmore, Evidence (McNaughton rev. 1961) § 2374 at 761-762; Annotation, "Accused's right to and prosecutor's privilege against, disclosure of identity of informer," 76 A.L.R.2d 262 (1959); Annotation, "Government's privilege to withhold disclosure of identity of informer," 1 L.Ed.2d 1998 (1957); 2 Underhill, Criminal Evidence (5 ed. 1956) § 327. This privilege has been recognized by the case law of this State, Cashen v. Spann, 66 N.J. 541, 552 (1975), cert. den. 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975); State v. Oliver, 50 N.J. 39, 41-42 (1967); State v. Burnett, 42 N.J. 377, 380 (1964); State v. Dolce, 41 N.J. 422, 435 (1964); Morss v. Forbes, 24 N.J. 341, 360-362 (1957); State v. Roundtree, 118 N.J. Super. 22, 29-30 (App. Div. 1971); State v. Infante, 116 N.J. Super. 252, 256-257 (App. Div. 1971), and included in the New Jersey Rules of Evidence, Evid. R. 36, and the statute N.J.S.A. 2A:84A-28 which reads:
*381 A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.
Because informers serve an indispensable role in police work, it is important to encourage their continued cooperation. For this reason, the so-called "informer's privilege" has long been considered essential to effective enforcement of the criminal code.[3]State v. Infante, supra, 116 N.J. Super. at 257; Note, 37 Geo. Wash. L. Rev. 639 (1969); 8 Wigmore, supra, § 2374 at 762. As the United States Supreme Court stated in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the leading case on the informer's privilege:
The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourages them to perform that obligation.
[353 U.S. at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644]
Professor Wigmore contributed the following additional comments regarding this privilege and the policies upon which it is founded:
A genuine privilege ... must be recognized for the identity of persons supplying the government with information concerning the commission *382 of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity  to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.
[8 Wigmore, supra, & 2374 at 761-762; footnotes omitted; emphasis in original][4] *383 Thus, it is generally agreed that the informer's privilege "is well established, and its soundness cannot be questioned." 8 Wigmore, supra, § 2374 at 762.
The privilege, however, is not absolute. Although at common law, disclosure of an informer's identity may have been within "the absolute discretion of the government,"[5] it is now well settled that the privilege is subject to important limitations. Roviaro v. United States, supra, 353 U.S. at 60, 77 S.Ct. at 626, 1 L.Ed.2d at 644-645; Cashen v. Spann, supra, 66 N.J. at 553; State v. Roundtree, supra, 118 N.J. Super. at 31; State v. Infante, supra, 116 N.J. Super. at 257. For example, where the disclosure of the contents of a communication does not reveal the identity of the informer, the contents are not privileged. "Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." Nor will it apply where disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v. United States, supra, 353 U.S. at 60-61, 77 S.Ct. at 627-628, 1 L.Ed.2d at 645; Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); N.J.S.A. 2A:84A-28. Furthermore, the privilege is inapplicable where the informer is an essential witness on a basic issue in the case, State v. Infante, supra, 116 N.J. Super. at 257, where the informer is an active participant in the crime for *384 which defendant is prosecuted, State v. Oliver, supra, 50 N.J. at 42, 45; State v. Roundtree, supra, 118 N.J. Super. at 31-32, where a defense of entrapment seems reasonably plausible, Roviaro v. United States, supra, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 647; State v. Dolce, supra, 41 N.J. 422, or where disclosure is mandated by fundamental principles of fairness to the accused. Roviaro v. United States, supra, 353 U.S. at 60, 77 S.Ct. at 626, 1 L.Ed.2d at 644-645; Cashen v. Spann, supra, 66 N.J. at 553. See generally, 8 Wigmore, supra, § 2374 at 765-770; Annotation, supra, 1 L.Ed.2d at 2001.
In its decisions concerning disclosure of an informer's identity, the United States Supreme Court has sought to accommodate the competing interests of criminal defendants and the State by prescribing the following balancing test:
We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
[Roviaro v. United States, supra, 353 U.S. at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646]
This Court has adopted the balancing test in applying state law. Cashen v. Spann, supra, 66 N.J. at 553; State v. Oliver, supra, 50 N.J. at 45-46; State v. Burnett, supra, 42 N.J. at 385. The test also has been incorporated into our rules of evidence and statute, N.J.S.A. 2A:84A:28. See Cashen v. Spann, supra, 66 N.J. at 553; State v. Burnett, supra, 42 N.J. at 380. The appropriate standard for reviewing the denial of a motion for disclosure is to determine whether the trial court abused its discretion after weighing the competing considerations of the balancing test. Roviaro v. United States, supra, 353 U.S. at 56, *385 61 n. 9, 77 S.Ct. at 628, 1 L.Ed.2d at 642, 645 n. 9; Nutter v. State, 8 Md. App. 635, 262 A.2d 80, 85 (Ct. App. 1970). Applying the test to this case, we conclude that the interests of the State must prevail.
Defendant contends that the informer was an "active participant" in the illegal transaction and therefore his identity ought to have been revealed. While the role of the informer should not be overemphasized (see, e.g., People v. Goggins, 34 N.Y.2d 163, 170, 356 N.Y.S.2d 571, 576, 313 N.E.2d 41, 45 (Ct. App. 1974), cert. den. 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974)), it does represent a relevant consideration. In Roviaro v. United States, for example, the United States Supreme Court reversed defendant's conviction for selling and transporting heroin and allowed disclosure of the informer's identity because of his integral role in the crime. In that case, the informer met defendant at a prearranged location and then, at defendant's direction, drove to another location where defendant alighted from the car, picked up a small package from a nearby tree and gave the package (later shown to contain heroin) to the informer. At trial these events were described by two police officers who had been witness to them. Applying the balancing test to these facts, the Court made the following observations:
The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. * * * John Doe was [defendant's] one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. * * *.
This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to *386 withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure.
[353 U.S. at 63-65, 77 S.Ct. at 630, 1 L.Ed.2d at 647; footnote omitted].
Other cases have also held this factor  the informer's actual participation in the crime for which defendant was prosecuted  to be important, if not determinative in warranting disclosure. See, e.g., Portomene v. United States, 221 F.2d 582 (5 Cir.1955) (appellant sold heroin to an informer who was the only other participant); United States v. Conforti, 200 F.2d 365 (7 Cir.1952), cert. den., 345 U.S. 925, 73 S.Ct. 782, 97 L.Ed. 1356 (1953) (defendant sold counterfeit money to an informer who was the only other person involved); Sorrentino v. United States, 163 F.2d 627 (9 Cir.1947) (appellant sold opium to an informer); State v. Davis, 450 S.W.2d 168 (Mo. Sup. Ct. 1970) (an informer supplied defendant with drugs which defendant then sold to a policeman); Eleazer v. Superior Court, 1 Cal.3d 847, 83 Cal. Rptr. 586, 464 P.2d 42 (Sup. Ct. 1970) (defendant sold seconal to an informer); State v. Phillips, 27 Ohio St.2d 294, 56 Ohio Op.2d 174, 272 N.E. 2d 347 (Sup. Ct. 1971) (sale of narcotics to an informer); Commonwealth v. Carter, 427 Pa. 53, 233 A.2d 284 (Sup. Ct. 1967) (sale of narcotics to an informer); see generally, Annot., supra, 76 A.L.R.2d (Supp. 1975) at 434 and cases cited.
A similar result is often reached where the informer, though not an actual participant in the crime, nevertheless plays an instrumental role in its occurrence. See, e.g., State v. Roundtree, supra, 118 N.J. Super. 22;[6]Gilmore v. United *387 States, 256 F.2d 565 (5 Cir.1958). See also Lopez-Hernandez v. United States, 394 F.2d 820 (9 Cir.1968); Commonwealth v. Ennis, 301 N.E.2d 589, 591 (Mass. App. 1973); Bennett v. State, 252 Ark. 128, 477 S.W.2d 497 (Sup. Ct. 1972); State v. Godwin, 106 Ariz. 252, 475 P.2d 236 (Sup. Ct. 1970).
On the other hand, absent a strong showing of need, courts generally deny disclosure where the informer plays only a marginal role, such as providing information or "tips" to the police or participating in the preliminary stage of a criminal investigation. See, e.g., State v. Infante, supra, 116 N.J. Super. 252; State v. Boone, 125 N.J. Super. 112 (App. Div. 1973), aff'd on other grounds, 66 N.J. 38 (1974).[7]See also Jones v. United States, 326 F.2d *388 124 (9 Cir.1963), cert. den., 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 499 (1964); Gulick v. State, 252 Md. 348, 249 A.2d 702 (Ct. App. 1969); Lopez v. State, 397 S.W.2d 76 (Tex. Cr. App. 1966) and generally Annot., supra, 76 A.L.R.2d (Supp. 1975) at 434-435; cf. People v. Goggins, supra, 34 N.Y.2d at 170, 356 N.Y.S.2d at 576, 313 N.E. 2d at 45. Proof that the informer witnessed the criminal transaction, without more, is usually considered insufficient to justify disclosure. State v. Oliver, supra, 50 N.J. 39; State v. Booker, 86 N.J. Super. 175 (App. Div. 1965).[8] In fact, where, as here, the role of the informer is *389 confined to introducing the undercover agent to defendant, the majority of decisions have refused to compel disclosure of the informer's identity.
Two such cases which are factually similar to the case at bar are United States v. Russ, 362 F.2d 843 (2 Cir.1966), cert. den., 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1967) and United States v. Coke, 339 F.2d 183 (2 Cir.1964). In the first case, the informer introduced a narcotics agent to defendant as a "friend from New Jersey who wanted to `cop some stuff.'" After an agreement was reached, the agent and the informer waited in a bar while defendant obtained the drugs. Shortly thereafter, defendant returned and asked the agent to join him outside, where the sale was consummated. Meanwhile, the informer remained inside the bar. In United States v. Coke, the informer introduced a police agent to defendant and then waited on the sidewalk outside the building while the sale of narcotics occurred inside. In both cases, the court grounded its decision on the fact that "the informant while more than a mere `tip-off' man did not play a central role in the transaction"; and, in any event, the court found that defendant had failed "to make clear to the trial judge why the identity of the informant was sought." United States v. Russ, supra, 362 F.2d at 845. See also State v. Roszkowski, 129 N.J. Super. 315 (App. Div. 1974), certif. den., 66 N.J. 325 (1974); United States v. Fredia, 319 F.2d 853 (2 Cir.1963); People v. Reed, 21 Ill.2d 416, 173 N.E.2d 422 (Sup. Ct. 1961), cert. den., 368 U.S. 990, 82 S.Ct. 606, 7 L.Ed.2d 527 (1962); Lee v. Maryland, 235 Md. 301, 201 A.2d 502, 504 (Ct. App. 1964).[9]
*390 Turning to the facts of this case, we recognize that, as in Roviaro, the informer is the only person (other than defendant) who could controvert, explain or amplify the testimony of the State's principal witness. Nonetheless, the role played by this informer is far less significant than that performed by the informers in Roviaro, Roundtree and the other cases cited above. In the instant case, it was the narcotics agent, not the informer, who actually purchased drugs from the defendant. Moreover, there is no evidence that the informer induced defendant to make the sale or in any other way entrapped defendant. Finally, the informer was not even present in the room when the sale was consummated.
Nevertheless, even when an informer's involvement falls short of active participation in a criminal offense, the privilege of nondisclosure will yield where the defendant can show that the testimony of the informer is essential to preparing his defense or to assuring a fair determination of the issues. Thus, on a motion for disclosure, courts must examine the nature of the accused's defenses and the purposes for which the informer's testimony is sought, as well as the extent of the informer's involvement. Roviaro v. United States, supra, 353 U.S. at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646.
In this case, the defendant has made no special showing of how disclosure of the informer's identity would be helpful to his defense. See Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States *391 v. Toombs, supra, 497 F.2d at 93; People v. Marquez, supra, 546 P.2d at 484-485.[10] Nor has he asserted a defense of entrapment which might also justify disclosure. Cf. Roviaro v. United States, supra, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 647; United States v. Simonetti, 326 F. 2d 614, 616 (2 Cir.1964); United States v. Coke, supra, 339 F.2d at 184; State v. Dolce, supra, 41 N.J. 422; State v. Roundtree, supra, 118 N.J. Super. at 32-34. Instead, defendant merely denies selling drugs to the undercover agent. Essentially, he relies on a defense of mistaken identity. Most courts have found that the possibility that an informer's testimony might establish a defense of mistaken identity is too speculative to warrant disclosure. See, e.g., State v. Booker, supra, 86 N.J. Super. at 179; United States v. Coke, supra, 339 F.2d at 184. On the other hand, some courts have considered this possibility an important factor in support of defendant's request. See, e.g., cases cited at note 9 supra. The instant case, however, is distinguishable from these latter cases in that here the illegal transaction allegedly took place in defendant's home and not "on the street." This fact severely weakens defendant's claim of mistaken identity. Accord, People v. Goggins, supra, 34 N.Y.2d at 167, 356 N.Y.S.2d at 574, 313 N.E.2d at 43.
Defendant also contends that because of inconsistencies in the trooper's testimony, the testimony of the informer is needed to corroborate or impeach the State's allegations.[11] *392 While we recognize that serious discrepancies in the testimony of a crucial State witness may warrant or necessitate disclosure, see, e.g., State v. Roundtree, supra, 118 N.J. Super. 22 (narcotic agents's oral testimony contradicted by his own written report); Gilmore v. United States, supra, 256 F.2d 565 (same); United States v. Martinez, 487 F.2d 973 (10 Cir.1973) (codefendant denied defendant's involvement in the crime); Commonwealth v. Ennis, supra, 301 N.E.2d at 590 (officer's testimony contradicted by several defense witnesses), we find that the discrepancies upon which defendant relies are at best minor. See note 10 supra. We also find the possibility that the informer's testimony might controvert the trooper's story to be speculative and remote.
Finally, defendant argues that because of the length of time between the alleged offense and his arrest, his ability to recall what happened is impaired and he needs the testimony of the informer to refresh his recollection. While impairment of a defendant's memory from a prosecutorial delay is sometimes considered relevant to a disclosure decision, see, e.g., State v. Roundtree, supra, 118 N.J. Super. at 30-31; People v. Durazo, supra, 52 Cal.2d at 357, 340 P.2d at 596, it cannot, without more, justify an otherwise unwarranted disclosure of an informer's identity.
In assessing the above factors, we are cognizant that free and unwarranted access to the identity of informers will effectively eliminate the informer's privilege. Cashen v. Spann, supra, 66 N.J. at 554; State v. Oliver, supra, 50 N.J. at 47-48; United States v. Toombs, supra, 497 F.2d at 93 n. 5. If a defendant may insist upon disclosure of an informer's identity on the mere chance that the *393 informer may contradict statements made by the State's witnesses or that his testimony may be needed to "refresh the defendant's memory," we can be sure that all defendants will routinely request disclosure. They have nothing to lose by doing so. Furthermore, they may gain dismissal of the prosecution where the State declines to reveal its source of information, as is often the case. State v. Burnett, supra, 42 N.J. at 385; State v. Dolce, supra, 41 N.J. at 436. Therefore, while we emphasize that courts must remain sensitive to the legitimate needs of defendants and to fundamental principles of fairness, they should not honor frivolous demands for information on unsubstantiated allegations of need. This is especially true where such demands would jeopardize the protection afforded police informers. Something more than speculation should be required of a defendant before the court overrules an informer's privilege of nondisclosure.[12]
*394 Therefore, while a close case has been presented herein, we conclude that the informer's limited involvement in the crime, the speculative significance of his testimony and the reasons offered for disclosure do not sufficiently outweigh the State's interest in protecting the free flow of information. Consequently, we reverse on this issue.

III
Before the Appellate Division, defendant raised two additional grounds of appeal, namely, that the conviction for possession of heroin should have merged with the conviction for distribution of the same heroin; and that the sentences were manifestly excessive. Although defendant did not file a cross-petition for certification to raise these alleged errors, we will address them sua sponte to fully dispose of this matter. R. 2:10-5.
The first of these issues was decided in a trilogy of cases last term, State v. Ruiz, 68 N.J. 54 (1975); State v. Davis, *395 68 N.J. 69 (1975) and State v. Jester, 68 N.J. 87 (1975), and in a related and recently decided case, State v. Valentine, 69 N.J. 205 (1976).[13] In those cases, the Court held that possession, possession with intent to distribute and distribution of a controlled dangerous substance are "demonstrably distinguishable criminal offenses" representing separate stages in a proscribed course of conduct. State v. Davis, supra 68 N.J. at 78; State v. Ruiz, supra at 58.[14] On the analysis employed in State v. Davis, supra 68 N.J. at 77-80, the Court concluded that the Legislature intended these as separate and distinct offenses. Therefore, where the proofs establish separate offenses, each crime may be separately punished.
The facts in the instant case are essentially indistinguishable from those in Jester and Valentine. In all three cases, the defendant was convicted of distribution of heroin and a possessory offense arising from the same criminal transaction. Moreover, in each case the defendant produced the heroin from a larger quantity of the illegal drug. Under these circumstances, it is clear that separate offenses have been established. Therefore the possessory offense does not merge into the conviction for distribution.
As to the excessive sentence claim, we note that the relevant standard to be applied is whether the sentence is so excessive that it constitutes an abuse of discretion on the part of the trial judge. State v. Tyson, 43 N.J. 411 (1964), cert. den., 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965).
*396 Defendant argues that because one of the goals of sentencing is rehabilitation and because he is only 20 years old and a "first offender," the recommendation of a suspended sentence in the probation report should have been adopted by the trial court. Defendant cites two cases, State v. Ward, 57 N.J. 75 (1970) and State v. Bess, 53 N.J. 10 (1968), for his position. A third case, State v. McBride, 66 N.J. 577 (1975) also appears to be relevant. All three, however, are distinguishable.
In Bess the defendant merely received a reduction in sentence. In McBride the defendant  because of his age and potential for rehabilitation  was transferred from State Prison to the Youth Correctional Institution Complex. However, in the case at bar, the judge took both the age of defendant and his potential for rehabilitation into account when he sentenced him to the Youth Correction Center at Yardville rather than State Prison. In addition, Milligan, unlike the defendant in Bess, did not ask for a reduction in sentence, but rather sought suspension of the sentence. Furthermore, the facts in Bess disclose extenuating circumstances which are absent here.
In Ward, the Court affirmed defendant's conviction for illegal possession of marihuana but suspended his sentence, and noted that "[w]e think generally a suspended sentence with an appropriate term of probation is sufficient penalty for a person who is convicted for the first time of possessing marihuana for his own use." 57 N.J. at 82. The instant case is distinguishable from Ward on two grounds: first, it involved heroin rather than marihuana, and second, it involved a sale of the drug rather than merely possession "for his own use."
In sentencing Milligan, the trial judge emphasized the seriousness of the crime of selling heroin and noted that had the defendant been convicted of a lesser crime, he would have been inclined to impose a noncustodial sentence. Therefore, while declining to sentence defendant to State Prison as recommended by the prosecutor, the judge concluded that *397 some custodial sentence was warranted. In light of all these circumstances, we do not find this sentence to be "manifestly excessive" or the action of the trial judge to be a "clear abuse of discretion." State v. Tyson, supra.
Reversed.
CONFORD, P.J.A.D., Temporarily Assigned (dissenting).
A consideration of the nature of the defense and of the informer's role in the crime here alleged leads me to believe this is a proper case for either disclosure to the defendant of the informer's identity or for an in camera examination of the informer by the judge, alone, to investigate the possible helpfulness of the informer to defendant if called as a witness.
The following facts are relevant. The defendant swore, in defense, that he had never encountered Trooper Roberson prior to the trial, or sold narcotics to him or to anyone on the date alleged by the State. He was at a disadvantage in presenting an alibi because at the time of the incident charged defendant was not working but was receiving unemployment benefits, and he was not arrested or charged until six months thereafter. Cf. State v. Roundtree, 118 N.J. Super. 22, 30-31 (App. Div. 1971). As was pointed out by the United States Supreme Court in the leading Roviaro case cited by the majority (353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639), opinion, ante page 385, as to the informer in that case, the informer here, too, was defendant's "one material witness" and had "helped to set up the criminal occurrence and had played a prominent part in it". See 353 U.S. at 63-65, 77 S.Ct. at 629-630. Further, "[t]his is a case where the Government's informer was the sole participant [aside from the testifying undercover agent] other than the accused, in the transaction charged." Ibid.
It seems to me that at least where the defendant takes the stand and denies participation in the criminal event, the court should indulge the presumption of innocence, to which defendant is always entitled before conviction, for the purpose *398 of evaluating whether, to quote our statute and rule, disclosure of the identity of the informer "is essential to assure a fair determination of the issues". N.J.S.A. 2A:84A-28, Evid. R. 36. On that presumption, the hope of the defendant that the informer will tell the truth if subpoenaed and thus either exculpate defendant outright or reveal weaknesses in the State's case should not be denigrated as "conjecture" or as the "remote possibility that an informer's testimony might serve some defendant," to cite the comments in State v. Oliver, 50 N.J. 39, 47 (1967). Observations of the latter kind seem to indulge, for the purpose indicated, a working hypothesis of the defendant's guilt rather than innocence; or, at the least, an assumption that even if a defendant is in fact innocent, the informer will probably certify his guilt when called to the stand. Such an attitude would seem to convert the statutory exception as to the instance where disclosure "is essential to assure a fair determination of the issues" into mere lip-service to the attainment of justice rather than an instrumentality thereof.
I am fully cognizant of the dilemma in cases of this kind facing the court, ably portrayed in the court's opinion. But I cannot concur in the philosophy of State v. Oliver, supra, cited with apparent approval by the court, that "[t]he balance contemplated by Roviaro must be struck in favor of law and order." 50 N.J. at 48. I would strike that balance in favor of giving the defendant a chance to corroborate his sworn denial of criminal implication by calling an informer, who, by the State's own evidence, has participated in the alleged criminal transaction as centrally as this one.
There is only the court to assure justice to a defendant. There is the whole executive arm of the Government to enforce law and order. And there can be no greater blot on justice than the conviction of an innocent defendant.
Finally, I would suggest the plain lack of rationality in the Oliver criterion as to whether the informer has participated in the criminal transaction as distinguished from merely witnessing it. See State v. Oliver, supra (50 N.J. *399 at 46); court's opinion, ante page 388. It is obvious that if a defendant were in fact innocent of the particular charge a truthful informant who allegedly "witnessed" the transaction, according to testimony of the undercover agent, would be as helpful to the defendant if called as one who had supposedly "participated" in it. The interests of "a fair determination of the issues" is served no less by revealing the name of the former informant than the latter.
I would either affirm the judgment of the Appellate Division, or remand for the purpose I have indicated.
For reversal  Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER  6.
For affirmance or remandment  Judge CONFORD  1.
NOTES
[1] Although the illegal sale allegedly took place on November 10, 1972, defendant was not arrested until May 3, 1973. At trial, Roberson's supervisor explained that the defendant was not arrested immediately after the sale because the narcotics investigation in the Pennsauken area had not yet been completed. Had the arrest been made at that time, he added, the undercover agent's usefulness would have ended because his true identity would have become generally known. This particular investigation lasted until April 1973, at which time 86 indictments were handed down involving 55 defendants.
[2] Defendant was 19 years old at the time of the alleged offense and 20 years old at the time of trial.
[3] The use of informers is particularly important in the enforcement of the narcotic laws. See The President's Commission on Law Enforcement and the Administration of Justice, The Challenge of Crime in a Free Society 218 (1966); United States v. Day, 384 F.2d 464, 467-469 (3 Cir.1967) (concurring opinion). See, e.g., State v. Davis, 68 N.J. 69, 75 (1975); State v. Jester, 68 N.J. 87, 89 (1975).
[4] The above passage reflects observations made by our own Court concerning the character of informers and the costs of securing their assistance:

Not all such information comes from people of high motivation. The police must have the aid of men of lesser quality who respond to selfish inducements, including money. These men are needed for what they know, but also for what they can learn because of their associations. This is especially true with respect to crimes of a consensual nature as to which there is little likelihood that a victim will complain. See Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312, 316, n. 6 (1966); and McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, 71 (1967).
[State v. Oliver, supra, 50 N.J. at 42].
* * * and if you call for the name of informer in such cases, no man will make a discovery, and public justice will be defeated. Upon that ground, therefore, it is that the informer for the purpose of a public prosecution shall not be disclosed.
[Morss v. Forbes, supra, 24 N.J. at 361 quoting from Hardy's Trial, 24 How. St. Tr. 99 (1794)]
The fears and concerns which have prompted the need to assure anonymity of informers rest on solid factual grounds. As this Court noted in State v. Oliver, supra: "The informer, paid or not, is subject to risks of retaliation." 50 N.J. at 42. Numerous examples exist which confirm the accuracy of this statement. See e.g., Draper v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (informer died four days after defendant's arrest); United States v. Toombs, 497 F.2d 88, 90 n. 1 (5 Cir.1974) (informer was shot three times subsequent to the incident involved in the case); Brown v. United States, 222 F.2d 293, 295 (9 Cir.1955) (a known informer met a "violent death" after defendant's first trial but prior to his retrial); Schuster v. City of New York, 5 N.Y. 2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (Ct. App. 1958) (an informer was shot and killed after the fact that he had supplied information leading to defendant's arrest was widely publicized); see also United States v. Estep, 151 F. Supp. 668, 673 (N.D. Tex 1957), aff'd, 251 F.2d 579 (5 Cir.1958); People v. Durazo, 52 Cal.2d 354, 340 P.2d 594, 597 (Sup. Ct. 1959) (dissenting opinion); Harrington v. State, 110 So.2d 495, 497 (Fla. Dist. Ct. App. 1959), appeal dismissed, 113 So.2d 231 (Fla. Sup. Ct. 1959).
[5] 8 Wigmore, supra, § 2374 at 764 quoting from Worthington v. Scribner, 109 Mass. 487, 488, 12 Am. Rep. 736 (1872). See also In re Quarles, 158 U.S. 532, 535-536, 15 S.Ct. 959, 960, 39 L.Ed. 1080, 1081 (1895) (dictum); Vogel v. Gruaz, 110 U.S. 311, 314, 4 S.Ct. 12, 13, 28 L.Ed. 158, 160 (1884); 2 Underhill, supra, § 327 at 819.
[6] In State v. Roundtree, a narcotics agent "insinuated himself into [a drug] society with the help of an informer." 118 N.J. Super. at 25. On the day of the offense, he and the informer met defendant at a tavern and asked him where they could buy some drugs. Defendant took them to a nearby house where defendant purchased the drugs while the agent and the informer waited outside in the car. Although the narcotics agent testified that it was he who had asked defendant for the drugs and for the name of defendant's supplier, the agent's handwritten notes indicated that it was the informer who had done so. On the basis of these facts, the court concluded:

Here it is clear from Trooper Irizarry's handwritten notes that the informer did far more than merely set up or witness the meeting between Trooper Irizarry and defendant. The informer was an active participant bringing about the violation. According to the notes the informer told defendant and Van Anglen that they, the informer and Irizarry, were "looking to cop." At the time defendant allegedly left the automobile to obtain the narcotics the informer had some conversation with him in an attempt to have the seller reveal himself. After defendant completed the sale, it was the informer who paid him $2. The informer was an active participant in the transaction and a material witness on the issue of defendant's guilt. As such his identity should have been disclosed. The failure to require disclosure under the circumstances of this case was prejudicial error, a denial of fundamental fairness.
[118 N.J. Super. at 32; emphasis supplied].
An analogous situation appears in Gilmore v. United States, supra, 256 F.2d 566. In that case, a narcotics agent testified that he had a brief conversation with an informer while in defendant's tavern, and then made arrangements with defendant to purchase some drugs. However, as in Roundtree, a written investigative report revealed that the informer's "function was not so limited." 256 F.2d at 566.
[7] In State v. Infante, the informer's involvement was limited to supplying the police with information about defendant's bookmaking activities and then placing a bet with defendant over the telephone while holding the telephone so that the police could listen. In upholding a denial of defendant's motion for disclosure, the Appellate Division stressed that, "[t]he informant's participation was not in the criminal activity for which defendant was convicted, but rather in the investigation leading up to the surveillance." 116 N.J. Super. at 259.

Similarly, in State v. Boone the court denied disclosure on the grounds that the informer's actions were strictly investigatory. In that case, even though the informer had purchased drugs directly from defendant, receipt of this information by the police was used merely to confirm their suspicions about defendant, whom they subsequently arrested and found in possession of a controlled dangerous substance.
[8] In State v. Booker, defendant was charged with possession and sale of narcotics. During two of the three transactions for which defendant was convicted, defendant sold the drugs to an undercover agent while the agent was seated next to an informer in the agent's automobile. The informer neither participated in nor arranged the sale. In denying disclosure, the court noted that "the mere fact that the informer was present does not take him out of the protection of the statute." 86 N.J. Super. at 179. But, the court added that such a presence is a factor to be considered in determining whether disclosure is essential to assure a fair trial.

In State v. Oliver defendant was convicted of bookmaking as a result of testimony from an undercover agent that on several occasions he had observed defendant's bookmaking activities at a tavern in New Brunswick. On each occasion, the agent was seated at a bar next to an informer. Trial testimony showed that "the informer [had] accompanied Decker [the agent] only because the informer was a familiar figure at the bar and his presence tended to shield Decker from the suspicion he might have generated as a stranger. The informer was not there as a witness but rather to make Decker less conspicuous." 50 N.J. at 41 Neither the agent nor the informer placed any bets with defendant. On the basis of these facts, the Court refused to compel disclosure of the informer's identity.
[9] Some courts, though, have taken a contrary view. See, e.g., People v. Williams, 51 Cal.2d 355, 333 P.2d 19 (Sup. Ct. 1958); People v. Durazo, supra, 52 Cal.2d 354, 340 P. 2d 594; Burks v. Commonwealth, 471 S.W.2d 298 (Ky. Sup. Ct. 1971).

These cases adopt the position that disclosure is necessary to a fair determination of the issues whenever the informer is a witness to the offense or may conceivably provide testimony which is helpful to the defense. Burks v. Commonwealth, supra, 471 S.W.2d at 300-301; see also People v. Garcia, 67 Cal.2d 830, 64 Cal. Rptr. 110, 434 P.2d 366, 369-371 (Sup. Ct. 1967); People v. McShann, 50 Cal.2d 802, 330 P.2d 33, 36 (Sup. Ct. 1958). Commentators have noted, however, that liberal application of this rule virtually eliminates the informer's privilege because there is always a possibility that the informer's testimony will be helpful to the defense. Comment, "Disclosure of Informers Who Might Establish the Accused's Innocence," 12 Stan. L. Rev. 256 (1959); Levine, "The Use of In Camera Hearings in Ruling on the Informer Privilege," 8 U. Mich. J.L. Reform 151, 161 (1974).
[10] In that case defendant failed to have one of the witnesses to the criminal event testify, and the Supreme Court of Colorado aptly observed:

... [W]hile ... the desirability of calling a witness is a matter for the accused rather than for the government, the accused must at least make some minimal affirmative showing of this need for disclosure.... It would defeat the purpose of the balancing process to require such disclosure upon the defendant's unsupported assertion that he desires it.
[546 P.2d at 485; citations omitted.]
[11] Specifically, in his trial testimony defendant denied ever owning certain articles of clothing which the agent stated defendant was wearing on the day of the alleged sale. Milligan also contradicted Roberson's description of the size of the room in which the sale supposedly occurred.
[12] We are aware of a proposal that trial judges, prior to deciding whether to require disclosure, hold in camera hearings attended exclusively by themselves, the prosecuting attorney and the informer. See, e.g., United States v. Day, supra, 384 F. 2d at 467, 469-470 (concurring opinion); Levine, supra, 8 U. Mich. J.L. Reform 151. Such a proceeding would provide the judge with sufficient information to make a fair and rational determination as to whether disclosure should be allowed.

While we believe that this proposal is theoretically attractive, and while we have no objection to the use of in camera proceedings per se (see State v. Allen, 70 N.J. 474 (1976); cf. People v. Goggins, supra, 34 N.Y.2d at 168-169, 356 N.Y.S.2d at 574-575, 313 N.E.2d at 43-44), we conclude that as a practical matter this proposal should not be adopted in cases of this nature. We believe that by requiring informers to appear in court before a judge, even though the defendant is excluded and the transcript is sealed, this proposal will effectively reduce cooperation with the police and defeat the purposes which underlie the informer's privilege. Therefore, at least until further study is done on the matter, we reaffirm our holding in State v. Oliver, supra:
In dealing with the informer privilege, we must be mindful of the ease with which the privilege would be destroyed if disclosure were required without a substantial showing of a need for it. * * *
We recognize of course a remote possibility that an informer's testimony might serve some defendant. The dilemma is that ordinarily a defendant cannot know unless the informer is made available, while to require him to be made available will end the prosecution and deny society the services of informers. We asked counsel for their views as to whether the knot could be cut by committing to a trial judge the power to question an informer privately or to consider a written statement of the informer, so limited as to preserve his anonymity, to determine whether his testimony would aid the defendant. We doubt that such a device could be used without revealing the informer or making the danger of his disclosure a forbidding possibility. Not infrequently an informer is known only to a single police officer and would not consent to a disclosure of his identity to a superior officer or even the prosecutor.
Perhaps a situation may arise in which some such procedure would be feasible and warranted. At the moment a choice seems unavoidable between a disclosure of the witness-informer in all cases or in none at all. A policy-decision must be made and it must rest upon probabilities. In those terms the risk of loss to defendants is pure conjecture, while the loss to society in its efforts to cope with crime would be real and substantial. The balance contemplated by Roviaro must be struck in favor of law and order. Cf. State v. La Fera, 42 N.J. 97, 107-108 (1964).
[50 N.J. at 47-48].
[13] While the author of this opinion continues to adhere to the view expressed in his dissenting opinions in the above named cases, he also recognizes that the majority holdings are controlling in this instance.
[14] State v. Davis, like the instant case, involved the offenses of possession and distribution of a controlled dangerous substance. N.J.S.A. 24:21-20(a)(1) and 24:21-19(a)(1). The other three decisions concerned possession with intent to distribute and distribution. N.J.S.A. 24:21-19(a)(1).