**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0718-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHELSEY G. WHITE, a/k/a
CHESLSEY G. WHITE,
CHELSEY WHITE,

    Defendant-Appellant.

_____

Submitted September 12, 2017 — Decided September 27, 2017

Before Judges Yannotti and Leone.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-11-1472.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Sarah C. Hunt, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Chelsey White was tried before a jury and found guilty of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1) (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b (count two); and fourth-degree unlawful possession of hollow-nosed bullets, N.J.S.A. 2C:39-3f (count three). Defendant later pled guilty to fourth-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7a (count four). Defendant appeals from the judgment of conviction dated September 2, 2015, and challenges his convictions and the sentences imposed.

I.

Following his indictment, defendant filed a motion to suppress the evidence obtained by the police incident to his arrest. At the suppression hearing, the State presented testimony from Sergeant Brian Suschke and Detective Joseph D'Ambrosio of the Trenton Police Department (TPD). Defendant did not present any witnesses.

Suschke testified that on June 15, 2013, at approximately 11:00 p.m., he received a tip from a "citizen contact" who told him "there was a black male wearing a white t-shirt holding a black jacket in his hand" who was standing in front of a housing project at an address on Oakland Street. The citizen contact stated that the person was in possession of a handgun. Suschke said

citizen contacts are individuals with whom he has established working relationships and who have voluntarily approached him to assist the police.

Suschke testified that citizen contacts are not confidential informants, since there is no quid pro quo exchange for their information, and these contacts are neither registered nor documented. Suschke stated that he provides his phone number to these individuals. Suschke said these contacts are the TPD's eyes and ears "out there in the streets."

Suschke further testified that he knew the contact who provided the tip in this matter. He said the contact had provided information to him on four or five prior occasions, and the information had always been reliable. Suschke stated that when he receives such information, it must be acted upon quickly, since he does not know how long the suspect will remain at a particular location.

After he received the tip, Suschke called Detectives D'Ambrosio and Stuart Owens of the TPD's Crime Suppression Unit and passed the tip along to them. He felt these officers "could go out there and . . . corroborate the information." Suschke also said that working with citizen contacts and calling upon an officer to investigate a tip is a common practice.

A-0718-15T4

D'Ambrosio testified that on June 15, 2013, at around 11:00 p.m., Suschke called him on his cell phone and relayed the tip. D'Ambrosio was familiar with the housing project on Oakland Street, which was in a high crime area in West Trenton. He testified that based on his experience, housing projects present many "avenues of escape." He contacted two other officers in the Crime Suppression Unit to help investigate the tip.

D'Ambrosio and Owens drove past the location. They saw the person who matched the description that had been provided to them. The officers later identified defendant as the person they observed. The officers parked about twenty feet away. The area was well lit. They could see defendant standing in the open door to the building.

D'Ambrosio and Owens approached the door. Defendant turned around quickly, entered the building, and proceeded to walk up a staircase. The officers followed defendant into the building and up the stairs. They remained several feet behind defendant, and defendant walked quickly up the stairs.

Because the stairs wrapped around, the officers lost sight of defendant for a second as they ascended to the first floor and defendant was walking up to the second floor. Defendant stopped when he reached the second-floor landing because his path was blocked by persons who were sitting on the steps to the third

floor. When the officers reached the second-floor landing, which was well lit by a ceiling light, defendant turned to face them.

D'Ambrosio saw a bulge in defendant's front waistband, which he described as a "large object protruding out from . . . [defendant's] belt line." Defendant's white t-shirt covered the bulge. D'Ambrosio "strongly believed" the bulge was a firearm because it was "consistent with the handle of a weapon." He testified that he had seen guns in waistbands before, and he had been on numerous gun-possession assignments.

D'Ambrosio said he was familiar with weapons and the waistband was "a common spot for a weapon to be." D'Ambrosio repeatedly ordered defendant to show his hands to ensure that his hands were away from the suspected weapon. Defendant did not obey. Defendant dropped the black jacket, placed his right hand on the bulge, and took a step back.

Defendant turned his back to the officers. D'Ambrosio ran towards defendant, placed him in a "bear hug," and seized what he felt was the butt of a gun. D'Ambrosio yelled "gun" to Owens, who moved defendant's hand away from the gun. The officers arrested defendant, and defendant was found in possession of crack cocaine and the gun, which was loaded with hollow-nose ammunition.

The judge placed an oral decision on the record. The judge found that Suschke and D'Ambrosio were credible witnesses. The

judge rejected defendant's claim that the officers did not have reasonable and articulable suspicion to stop him in the stairwell or even to approach him outside the building. Defendant argued that the information provided by Suschke's contact lacked the required specificity and corroboration to justify the stop.

The judge found, however, that the officers had reasonable and articulable suspicion that defendant was engaged in, or about to engage in, criminal activity. The judge determined that the officers had reasonable suspicion that defendant was in possession of a weapon, which posed a threat to the officers.

The judge determined that the officers' stop and frisk of defendant, discovery of the gun, and defendant's arrest were valid. The judge also found that the officers properly seized the CDS in defendant's pocket after conducting a lawful search incident to defendant's arrest.

At the trial, the State presented testimony from D'Ambrosio and Investigator Randolph Toth, a firearms examiner with the New Jersey State Police. D'Ambrosio essentially testified to the same facts he had recounted at the suppression hearing. D'Ambrosio noted that while he, Owens, and Officer Charles Steever were struggling with defendant, Officer Samuel Johnson detained Rahkeem Ortiz, who was on the second-floor landing in the stairwell, but closer to the stairs leading to the third floor of the building.

6

D'Ambrosio explained that because his observations and encounter with defendant led to defendant's arrest and the seizure of the weapon, he saw no reason to question Ortiz or other persons who were on the landing at the time, or submit the gun and ammunition for DNA or fingerprint tests. Ortiz was not brought to the police station, and D'Ambrosio did not know if he was arrested.

Defendant testified that on June 15, 2013, he arrived at the Oakland Street housing project at 7:00 p.m. to visit a friend who resided on the second floor. He was speaking with Ortiz on the second-floor landing when the police came up the stairs. Defendant said the officers drew their weapons and ordered him and Ortiz to put up their hands and place them against the wall.

Defendant said he and Ortiz complied and the officers searched them, but found nothing. The officers then picked up a jacket from the stairwell and said, "gun." According to defendant, the officers asked him and Ortiz whose gun it was. Defendant claimed he told the officers it was not his gun, but Ortiz nodded in his direction. The officers then arrested him. Defendant denied that he was outside the building at any time between 7:00 p.m. and his arrest. He also denied that the officer recovered the gun from his waistband.

The State called Owens as a rebuttal witness. He said there was no way defendant and Ortiz could have been mistaken for each

7

other because defendant is a black male with a bald head, and Ortiz is a very light-skinned black male with shoulder-length braids. Owens stated that he had been involved in about 100 gun arrests, including arrests where several individuals had been found in the area where the gun was found.

The assistant prosecutor asked Owens whom he would charge in a situation where a gun is found on the ground in close proximity to two individuals. The judge overruled defense counsel's objection to the question, and Owens testified that he would charge both individuals because he did not know whose gun it is.

The jury found defendant guilty on counts one (possession of CDS), two (possession of the handgun), and three (possession of hollow-nose ammunition). Thereafter defendant pled guilty to count four (certain persons not to possess weapons).

When he entered his plea, defendant admitted that on June 15, 2013, he was in possession of a handgun, which was in his waistband. He also admitted that he knew he was prohibited from doing so, as a result of a conviction in 2004 for possession of CDS.

The judge later granted the State's motion to sentence defendant on count two to an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a), and sentenced defendant on that count to twelve years of incarceration with six years of parole

ineligibility. The judge also imposed concurrent terms of four years on count one, twelve months on count three, and eighteen months on count four. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I
THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE POLICE SEIZURE OF THE DEFENDANT WITHOUT REASONABLE SUSPICION.

POINT II
THE DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF RELEVANT EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE THE DEFENDANT HAS A RIGHT TO PRESENT A COMPLETE DEFENSE.

POINT III
THE DEFENDANT WAS UNFAIRLY PREJUDICED BY THE PROSECUTOR'S FAILURE TO ABIDE BY THE REQUIREMENT THAT OPENING STATEMENTS BE SUCCINCT.

POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY IMPROPER ADMISSION OF EXPERT WITNESS TESTIMONY BY A FACT WITNESS.

POINT V
THE DEFFENDANT'S SENTENCE IS EXCESSIVE:

A. THE DEFENDANT WAS IMPROPERLY SENTENCED TO AN EXTENDED TERM.

B. THE TRIAL COURT IMPROPERLY BALANCED THE AGGRAVATING AND MITIGATING FACTORS.

## C. THE TRIAL COURT IMPROPERLY MADE FINDINGS OF FACT TO ENHANCE THE SENTENCE.

## II.

We first consider defendant's contention that the judge erred by denying his motion to suppress. Defendant argues that the police lacked reasonable and articulable suspicion sufficient to justify stopping him. He contends the citizen contact's information lacked specificity and corroboration of that information was required to justify the police in stopping defendant in the stairwell, or even to approach him outside the building.

"Appellate courts reviewing a grant or denial of a motion to suppress must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (citations omitted). "We defer to those findings of fact because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

We do not, however, defer to the trial court's legal conclusions, which we review de novo. Id. at 263 (citation omitted). Regarding "mixed questions of law and fact, we give deference . . . to the supported factual findings of the trial

court, but review de novo the lower court's application of any legal rules to such factual findings." State v. Harris, 181 N.J. 391, 416 (2004) (citing State v. Marshall, 148 N.J. 89, 185, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

Here, the record shows that the police officers initially made an investigatory, or so-called Terry stop of defendant. Such a stop occurs when the police approach an individual, who does not reasonably feel free to leave, even though the encounter does not constitute a formal arrest. State v. Stovall, 170 N.J. 346, 355-56 (2002). Under Terry, a law enforcement officer may detain an individual without a warrant for a brief period, if the stop is "based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Rodriquez, 172 N.J. 117, 126 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)).

A Terry stop "is valid only if the officer has a 'particularized suspicion' based upon an objective observation that the person stopped has been or is about to engage in criminal wrongdoing." State v. Davis, 104 N.J. 490, 504 (1986). In determining whether the officer had reasonable and articulable

suspicion to make the stop, the court considers the totality of circumstances. <u>Stovall</u>, <u>supra</u>, 170 <u>N.J.</u> at 370.

Here, there is sufficient evidence in the record to support the judge's finding that the officers had reasonable and articulable suspicion that defendant had engaged in, or was about to engage in, criminal wrongdoing. As explained previously, Suschke had received information from a citizen contact that a person was in possession of a handgun.

The contact provided Suschke with a description of the individual and gave him the location where he could be found. Previously, the contact had provided Suschke with reliable information. Suschke relayed the information to other officers, for investigation. The officers found defendant, who matched the description the contact had provided, outside a building in a housing project on Oakland Street, which was located in a high-crime area.

The officers observed defendant enter the building and followed defendant up the stairs. They did not stop defendant until D'Ambrosio observed a bulge in the waistband of defendant's pants. D'Ambrosio knew, from his experience and training, that weapons are often carried there.

Based on these facts, the motion judge correctly found that the officers validly made a <u>Terry</u> stop. Contrary to defendant's

contention, the information the citizen contact provided to Suschke was not the sole basis for the stop. The judge noted that the officers did not stop defendant until D'Ambrosio observed the bulge in defendant's waistband, and found that D'Ambrosio reasonably believed defendant was in possession of a weapon. The record supports the judge's determination that the officers were justified in stopping defendant to investigate.

Moreover, the record supports the judge's finding that the officers properly frisked defendant after the stop because the officers reasonably believed their safety was at risk. See State v. Smith, 134 N.J. 599, 621 (1994) (noting that a bulge is sufficient to "validate a protective pat-down"); State v. Wanczyk, 201 N.J. Super. 258, 264 (App. Div. 1985) (holding that the officers had the right to frisk the defendant after observing a bulge in his jacket).

We conclude that the investigatory stop, the ensuing pat-down, and defendant's arrest were lawful. Therefore, the judge did not err by denying defendant's motion to suppress the evidence seized incident to his arrest.

### III.

Defendant argues that the judge erred by denying his motion to compel the State to disclose the identity of the citizen contact. Defendant asserts that a citizen contact is not a

13

confidential informant and, therefore, is not entitled to the protections afforded by court rule and statute. Defendant further argues that examination of the citizen contact was essential to his defense because the police allegedly relied solely on the contact's tip to establish probable cause. Defendant therefore argues the citizen contact had more than a marginal role in the incident that led to his conviction.

Because informants can serve an indispensable role in law enforcement, their continued cooperation should be encouraged. State v. Milligan, 71 N.J. 373, 381 (1976). "For this reason, the so-called 'informer's privilege' has long been considered essential to effective enforcement of the criminal code." Ibid. (internal citations omitted). The privilege to withhold the identity of an informer is not, however, absolute. Id. at 383.

New Jersey recognizes the need to protect the identity of informants in N.J.R.E. 516, which tracks the language of N.J.S.A. 2A:84A-28. The rule and statute provide that:

> [a] witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the

14

> information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.
>
> [N.J.R.E. 516; N.J.S.A. 2A:84A-28.]

The privilege applies to all persons who give information to the police regarding a violation of the law, not simply those "who do so on a regular basis or pursuant to a mutually beneficial arrangement with the police." State v. Adim, 410 N.J. Super. 410, 433 (App. Div. 2009) (quoting N.J.R.E. 516). As the Court pointed out in State v. Oliver, 50 N.J. 39, 42 (1967), whether paid or not, an informer is subject to the risk of retaliation and "comes within the protection of the privilege."

In determining whether to order the disclosure of an informant's identity, courts use a balancing test to weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." Milligan, supra, 71 N.J. at 384 (quoting Roviaro v. United States, 353 U.S. 53, 62, 77 S. Ct. 623, 628, 1 L. Ed. 2d 639, 646 (1957)). In determining whether to order disclosure of an informant's identity, the court must consider factors such as the crime involved, the accused's possible defenses, and the potential significance of the informer's testimony. Ibid.

A-0718-15T4

Generally, a court will deny a motion to compel disclosure of an informant's identity unless the defendant presents a strong showing of need for disclosure. Id. at 387-89. Moreover, a court will deny a motion to compel disclosure where the informer has played only a marginal role in the events leading up to the arrest, "such as providing information or 'tips' to the police or participating in the preliminary stage of a criminal investigation." Ibid. When reviewing the denial of a motion to compel disclosure of an informant's identity, we consider whether the trial court considered the relevant factors in the balancing test, and whether the court's decision represents an abuse of discretion. Id. at 384-85.

Here, the judge determined that the informer's privilege applied in this matter and disclosure of the citizen contact's identity was not essential to ensure defendant had a fair trial. As we have noted, the citizen contact reported an apparent violation of the law to the police. Moreover, defendant failed to present a strong showing of need for disclosure of the informant's identity. The record supports the judge's findings on these issues.

The judge noted that the citizen contact had only provided the police with a tip of illegal activity at a specific location and the contact was not a participant in the charged offenses. The contact's role was marginal. In addition, the police did not

16

stop defendant based solely on the citizen contact's tip. The police stopped defendant after they corroborated the information provided by the citizen contact and D'Ambrosio also observed the bulge in defendant's waistband, which he reasonably believed was a handgun. Neither the content of the informant's tip, nor the basis for the tip, were relevant to the defense because the State's case was based upon the events that took place after the police arrived at the Oakland Street building and the officers' personal observations.

We reject defendant's contention that the contact's identity was essential to a fair trial. Defendant contends that the informer could have supported a defense of third-party guilt. However, even if the informer would have testified that defendant was not the person he saw outside the building on Oakland Street with a gun, or stated that he was mistaken when he said he saw someone with a gun at that location, the testimony would not have supported a third-party-guilt defense or exonerated defendant.

At trial, the State presented testimony that defendant matched the description provided by the informant and the officers found defendant on the second-floor landing with a gun in his waistband. Thus, the record shows that defendant failed to make a showing of need for disclosure of the informer's identity. As the

A-0718-15T4

judge found, under the circumstances, the informer was entitled to the protection of the privilege.

We conclude there is sufficient credible evidence in the record to support the judge's decision that upon consideration of the relevant factors the contact's identity should be protected. The denial of defendant's motion to compel disclosure of the identity of the citizen contact was not an abuse of discretion.

IV.

Defendant argues that the assistant prosecutor's opening statement was improper and prejudicial. He contends the prosecutor provided a "very detailed and wholly unnecessary factual recitation" of the facts of the State's case. He asserts that the prosecutor's opening statement was overly repetitive. Defendant also argues that he was prejudiced when the trial judge overruled his objection to the prosecutor's opening statement in front of the jury.

"Prosecutors 'are afforded considerable leeway in making opening statements and summations.'" State v. Echols, 199 N.J. 344, 359-60 (2009) (quoting State v. Williams, 113 N.J. 393, 447 (1988)). Within these bounds, prosecutors must always "act in accordance with certain fundamental principles of fairness," and "should limit comments in the opening to the 'facts [they] intend[] in good faith to prove by competent evidence.'" Id. (alterations

in original) (first quoting State v. Wakefield, 190 N.J. 397, 436 (2007), cert. denied, 552 U.S. 1146 (2008); then quoting State v. Hipplewith, 33 N.J. 300, 309 (1960)). Therefore, for a prosecutor's opening statement to warrant reversal, the comments must be "clearly and unmistakably improper" and the misconduct "so egregious that it deprived the defendant of a fair trial." Wakefield, supra, 190 N.J. at 438 (first quoting State v. Papasavvas, 163 N.J. 565, 625 (2000); then quoting State v. Smith, 167 N.J. 158, 181 (2001)).

Here, the prosecutor's opening statement was not improper because, as defense counsel acknowledged in the trial court, the prosecutor presented an accurate presentation of the facts that the State intended to prove. The prosecutor did not discuss facts that the State did not later support with evidence. In addition, the judge had instructed the jury that the attorneys' opening statements are not evidence, and the prosecutor reminded the jury that the State's case would be based on the evidence. The prosecutor's presentation of the facts was not improperly repetitive.

Furthermore, the record does not support defendant's contention that he was prejudiced when the judge informed the jury that he had overruled defendant's objection to the State's opening statement. Defense counsel had objected to the State's opening in

the presence of the jury, rather than raising his objection at sidebar. The judge properly advised the jury of his ruling on the objection so that the jury would not believe that some part of the State's opening was improper. The judge advised the jury that he is obligated to rule on objections raised by the parties and instructed the jurors "not [to] conclude that because [he] rule[s] one way or another, that [he has] any feelings about the outcome of this case."

Moreover, the judge did not disparage defense counsel in any way, or make "remarks that might prejudice a party or which [were] calculated to influence the minds of the jury." State v. Belliard, 415 N.J. Super. 51, 84 (App. Div. 2010) (quoting D.G. ex. rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 25 (App. Div.), certif. denied, 196 N.J. 346, cert. denied, 555 U.S. 1085, 129 S. Ct. 776, 172 L. Ed. 2d 756 (2008)), certif. denied, 205 N.J. 81 (2011). The judge's remarks regarding his ruling were proper.

We therefore reject defendant's contention that the judge erred by informing the jury that he had overruled defendant's objection to the prosecutor's opening statement.

V.

As noted previously, during his rebuttal testimony, the assistant prosecutor asked Owens whom he would charge if he

recovered a gun that was found on the ground in proximity to two individuals. Defense counsel objected to the question, arguing that it was an "open-ended question" and the response would address the ultimate issue in the case, specifically, whether defendant committed the charged offenses.

The judge overruled the objection, finding that the question was proper. The judge found that Owens's response intended to respond to defendant's version of the events, and it would not address the ultimate issue in the case. The judge permitted the prosecutor to pose the question, but required that he lay a proper foundation for it.

Owens then testified that he had participated in about one hundred gun arrests and that he had "been involved in cases where multiple individuals [were] found to have been in an area where a gun is found." The prosecutor again posed the hypothetical. Owens testified that he "would charge both individuals . . . because I don't know whose [gun] it is," meaning that the gun "could be either individuals."

On appeal, defendant argues that Owens's response was improper lay witness testimony. We disagree. Owens was testifying as a fact witness. However, under N.J.R.E. 701, a lay witness can give "testimony in the form of opinions or inferences" if the testimony is "(a) rationally based on perception of the witness

and (b) will assist in understanding the witness' testimony or in determining a fact in issue."

Owens's testimony was based on his perceptions, which were rationally drawn from his personal experiences as a police officer. His testimony also was relevant to rebut the credibility of defendant's testimony. D'Ambrosio found the gun lying on the ground between defendant and Ortiz but arrested only defendant. Thus, Owens's testimony would assist the jury in determining a fact in issue, specifically whether D'Ambrosio recovered the gun from defendant's waistband, as D'Ambrosio testified. We conclude the judge did not err by allowing Owens to respond to the hypothetical question. His testimony was properly lay opinion testimony pursuant to N.J.R.E. 701.

We also reject defendant's contention, raised for the first time on appeal, that the judge should have excluded the evidence under N.J.R.E. 403. The rule provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issue, or misleading the jury." Ibid. As we have explained, Owens's response to the hypothetical was relevant to the credibility of defendant's testimony. Defendant has not shown that the admission of this testimony resulted in undue prejudice.

Defendant argues that the judge erred by imposing an extended-term sentence of twelve years of incarceration, with six years of parole ineligibility, on count two (unlawful possession of a handgun). Defendant contends the judge improperly balanced the aggravating and mitigating factors and the judge erred by imposing a sentence that exceeded five years. He further argues that the judge improperly made findings of fact to enhance the sentence.

An appellate court's review of the trial court's "sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We consider "whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether the 'factfinder [has] appl[ied] correct legal principles in exercising its discretion.'" Ibid. (alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)).

We will not set aside a trial court's sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting Roth, supra, 95 N.J. at 364-65).

Here, the judge noted that defendant had an extended criminal history, which included four juvenile delinquency adjudications and sixteen adult arrests. Defendant also has three convictions for petty disorderly persons offenses or municipal ordinance violations; four convictions of CDS-related disorderly persons offenses; and three prior convictions for indictable offenses, two for possession of CDS, and one for unlawful possession of a handgun.

Based on this record, the judge found aggravating factor six, N.J.S.A. 2C:44-1a(6) (extent of defendant's prior criminal record and the seriousness of the offenses for which defendant has been convicted); aggravating factor three, N.J.S.A. 2C:44-1a(3) (risk that defendant will commit another offense); and aggravating factor nine, N.J.S.A. 2C:44-1a(9) (need to deter defendant and others from violating the law). The judge found mitigating factor eleven, N.J.S.A. 2C:44-1b(11) (defendant's imprisonment will entail excessive hardship to defendant or his dependents), and gave it some weight. The judge determined that the three aggravating factors substantially outweighed the one mitigating factor.

The judge found that defendant qualified for an extended term as a persistent offender pursuant to N.J.S.A. 2C:43-3a, since defendant had two prior convictions for indictable offenses in

February 2004 and September 2013, and defendant had committed both offenses when he was at least eighteen years old. Moreover, defendant was convicted of both offenses within ten years of the current offense.

The judge then considered the expanded range of possible sentences pursuant to State v. Pierce, 188 N.J. 155, 169 (2006). The range "starts at the minimum of the ordinary-term range and ends at the maximum of the extended-term range." Ibid. The judge determined the sentence within that expanded range, in accordance with his findings of aggravating and mitigating factors.

On appeal, defendant does not argue that he does not qualify for an extended term under N.J.S.A. 2C:43-3a. He argues, however, that the judge improperly enhanced the sentence based on his findings of aggravating factors three and nine. He argues that the judge lengthened the sentence based on a finding that an enhanced sentence would have a deterrent effect and that defendant posed a risk of reoffending. The record does not support these arguments.

The judge did not find that an enhanced sentence would have a deterrent effect. The judge found that there was a risk that defendant would reoffend, and that there was a need to deter defendant and others from violating the law. These findings were amply supported by defendant's extensive criminal record.

25

Defendant further argues that the judge erred by considering his criminal record as support for his findings of aggravating factors three, six, and nine, because the judge allegedly had considered his record as a basis for imposing an extended term. Again, we disagree.

Here, the judge considered defendant's entire criminal record at sentencing. The two convictions that formed the basis for the imposition of the extended term were only a part of that record. "[O]ther aspects of the defendant's record, which are not among the minimal conditions for determining persistent offender status, . . . will be relevant" in setting the sentence within the extended range. State v. Dunbar, 108 N.J. 80, 92 (1987). Thus, the judge properly considered the length and nature of defendant's criminal record, which extended throughout his adult life. The judge also properly considered that defendant had multiple convictions for the same offenses.

Defendant also contends that the judge erred by failing to find mitigating factor one, N.J.S.A. 2C:44-1b(1) (defendant's conduct did not cause or threaten serious harm). However, the record fully supports the judge's refusal to find this factor. Defendant had been convicted of possessing a semi-automatic handgun, which was loaded with hollow-nose bullets, as well as

possession of CDS. The judge reasonably found that such conduct threatened serious harm. The record supports that finding.

In addition, defendant maintains the judge should have found mitigating factor two, N.J.S.A. 2C:44-1b(2) (defendant did not contemplate that his conduct would cause or threaten serious harm). Defendant did not raise this issue in the trial court. In any event, there is nothing in the record that would have supported a finding of this aggravating factor.

We therefore conclude that the judge followed the applicable sentencing guidelines, the judge's findings of the aggravating and mitigating factors are supported by sufficient evidence, and the sentences imposed do not represent an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0718-15T4