**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5221-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID J. SILCOTT, a/k/a
DAVID S. SILCOTT, and
STRICT,

     Defendant-Appellant.

_____

Submitted September 10, 2019 – Decided September 19, 2019

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment Nos. 14-12-0935, 15-11-1084, and 17-04-0372.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the briefs).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty of second-degree possession of a controlled dangerous substance (CDS) (cocaine) with intent to distribute, in violation of N.J.S.A. 2C:35-5(b)(2), and other offenses. Defendant appeals from the judgment of conviction (JOC) dated May 16, 2017. We affirm.

I.

On December 10, 2014, the grand jury returned Indictment No. 14-12-0935 charging defendant with second-degree possession of one-half ounce or more, but less than five ounces, of a CDS (cocaine), with intent to distribute, N.J.S.A. 2C:35-5(b)(2) (count one); third-degree possession of a CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count two); third-degree possession of a CDS (5-methoxy-NN-diisopropyltryptamine) with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (count three); third-degree possession of a CDS (5-methoxy-NN-diisopropyltryptamine), N.J.S.A. 2C:35-10(a)(1) (count four); third-degree possession of a radio to intercept emergency communications while committing a crime, N.J.S.A. 2C:33-22 (count five); third-degree keeping, using or being connected with a place used for the purpose of fighting or baiting a live animal or creature, N.J.S.A. 4:22-24(a) (count six); and third-degree owning,

possessing, or keeping a live animal for the purpose of fighting or baiting, N.J.S.A. 4:22-24(e) (count seven).

In November 2015, the grand jury returned Indictment No. 15-11-1084, charging defendant with third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a). Furthermore, in April 2017, defendant was charged in Indictment No. 17-04-0372 with third-degree possession of a CDS (heroin), N.J.S.A. 2C:35-10(a)(1) (count one); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count two); and fourth-degree obstructing the administration of the law, N.J.S.A. 2C:29-1(a) (count three).

Prior to trial, defendant filed motions to: (1) suppress statements made to a law enforcement officer from the Society for the Prevention of Cruelty to Animals (SPCA); (2) dismiss counts six and seven of Indictment No. 14-12-0935; (3) suppress evidence discovered during the execution of a search warrant; and (4) compel the New Jersey State Police (NJSP) to disclose the identity of a confidential informant (CI) who provided information that defendant was engaged in the distribution of a CDS.

The trial judge conducted an evidentiary hearing on defendant's motions, and filed a written opinion dated February 4, 2016, in which he concluded that

the motions should be denied. The judge memorialized his decision in an order dated March 31, 2016.

Thereafter, defendant was tried before a jury on the charges in Indictment No. 14-12-0935. At the trial, the State presented testimony from NJSP Detective James O'Rourke, NJSP Detective-Sergeant Salvatore Giulano, NJSP forensic scientist Carisa Wilcox, Dr. Amy Granato, SPCA law enforcement officer Diana Leuallen, and Sergeant Stephen Dick from the Salem County Prosecutor's Office. Defendant did not testify and presented no witnesses. During the trial, the judge dismissed count six. The jury found defendant not guilty on count three, but guilty on counts one, two, four, five, and seven.

In May 2017, defendant pled guilty to third-degree resisting arrest, as charged in Indictment No. 15-11-1084, and the State agreed to recommend a flat, four-year term of incarceration, to run concurrently with the sentences on Indictments Nos. 14-12-0935 and 17-04-0372. Defendant also pled guilty to third-degree possession of a CDS (heroin), as charged in count one of Indictment No. 17-04-0372. The State agreed to dismiss the other charges in that indictment and recommend a flat, four-year term of incarceration, to run concurrently with the sentences on Indictment Nos. 14-12-0935 and 15-11-1084.

The State filed a motion under Indictment No. 14-12-0935 for an extended term pursuant to N.J.S.A. 2C:44-3(a). The judge found that defendant met the statutory requirements as a persistent offender and granted the motion. The judge merged count two (third-degree possession of a CDS) with count one (second-degree possession of a CDS with intent to distribute), and sentenced defendant on count one to an extended term of fifteen years of incarceration, with a seven-year period of parole ineligibility. The judge sentenced defendant to a five-year prison term on count four (third-degree possession of a CDS) and eighteen months of incarceration on count five (fourth-degree possession of a scanner while committing a crime), to be served concurrently with the sentence on count one.

The judge also sentenced defendant to a consecutive five-year prison term on count seven (third-degree owning, possessing, or keeping a live animal for fighting or baiting). The judge ordered a six-month suspension of defendant's driver's license, and imposed appropriate fees, penalties, and assessments. In addition, the judge sentenced defendant to flat, four-term prison terms on the charges in Indictment No. 15-11-1084 (third-degree resisting arrest), and Indictment No. 17-04-0372 (third-degree possession of a CDS), to be served concurrently with the other sentences.

Defendant appeals from the JOC entered on Indictment No. 14-12-0935.

He raises the following arguments:

POINT I
THE DEFENDANT'S INVOCATION OF HIS RIGHT
TO REMAIN SILENT WAS NOT SCRUPULOUSLY
HONORED.

A. The Defendant's Communication to a Law
Enforcement Officer at the Scene was the Result of
Questioning.

B. The Defendant's Formal Statement at Police
Headquarters Should Be Suppressed as the Fruit of the
Poisonous Tree.

POINT II
THE DEFENDANT'S RIGHT TO DUE PROCESS OF
LAW AS GUARANTEED BY THE FOURTEENTH
AMENDMENT TO THE UNITED STATES
CONSTITUTION AND ART. I, PAR. 1 OF THE NEW
JERSEY CONSTITUTION WAS VIOLATED BY
PROSECUTORIAL MISCONDUCT. (Not Raised
Below).

A. The Prosecutor Impermissibly Shifted the Burden
of Proof to the Defendant about Family Access to Drugs
Found in a Family House.

B. The Prosecutor Extracted a Penalty on the Accused
for Exercising His Constitutional Right Not to Testify.

POINT III
A STATE'S KEY LAY WITNESS RENDERED
HIGHLY PREJUDICIAL EXPERT OPINIONS
WITHOUT PROVIDING AN EXPERT WITNESS

6

REPORT AND WITHOUT QUALIFYING AS AN EXPERT AT TRIAL.

POINT IV
THE TRIAL COURT SHOULD HAVE COMPELLED DISCLOSURE OF THE CONFIDENTIAL INFORMANT.

POINT V
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION, WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT JURORS ON ALL THE ELEMENTS OF INTENT TO DISTRIBUTE CDS.  (Not Raised Below).

POINT VI
THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED.

A.  The Defendant is Entitled to a [Hearing Pursuant to Franks v. Delaware, 438 U.S. 154 (1978)] Because the Affidavit in Support of the Search Warrant Contained Material Misrepresentations of Fact the Officer Knew or Should Have Known Were False.

B.  The Affidavit Does Not Establish Probable Cause.

POINT VII
THE SENTENCE IS EXCESSIVE.

A.    The Trial Court Improperly Balanced the Aggravating and Mitigating Factors.

B.    The Five-Year Consecutive Sentence Should Run Concurrently.

## II.

Defendant argues that the trial court erred by denying his motion to suppress statements he made to SPCA officer Leuallen and the recorded statement he provided to the NJSP Troopers.  We disagree.

The record shows that in September 2013, the NJSP received information from a CI that an individual with the street name of "Strict" was distributing cocaine from a residence on King Drive in Fairfield Township.  O'Rourke identified defendant as a person associated with that address.  O'Rourke showed the CI a photograph of defendant, and the CI confirmed that defendant was the person known as "Strict."  In December 2013, the CI made two controlled purchases of substances from defendant, which both tested positive for cocaine.

Based on this information, O'Rourke applied to a Superior Court judge for a warrant to search the property on King Drive, including the residence, outbuildings, dog kennels, and dog houses.  The judge found probable cause and granted the application.  The warrant was executed on December 20, 2013.

At the suppression hearing, O'Rourke testified that he arrived at the King Drive property at around 6:00 a.m. along with other members of the NJSP. They entered the property at around 9:00 a.m. O'Rourke removed defendant from the home, handcuffed him, and placed him in the back seat of a police cruiser. O'Rourke read defendant the standard Miranda rights.[1] Defendant acknowledged he understood his rights. At some point thereafter, defendant told O'Rourke that "there's nothing to talk about" and he sat quietly in the cruiser.

O'Rourke recalled that, after he informed defendant of his Miranda rights, Leuallen, a certified humane law enforcement officer with the SPCA, approached defendant and asked if he was the owner of the dogs. Although O'Rourke was unsure whether Leuallen approached defendant before or after defendant stated "he didn't want to talk," the trial judge found that Leuallen approached defendant after defendant said "he didn't want to talk."

Leuallen testified that after she arrived at the property, she approached defendant, who was sitting in the back seat of a police cruiser. She introduced herself as an SPCA officer and told him she was there to remove the dogs from the property and bring them to a shelter. Leuallen asked defendant "if he was interested in releasing the dogs."

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Leuallen asked defendant about releasing the dogs because, if he agreed, this would provide the dogs an opportunity "to get freed up so they're not held in the shelter environment for months or years." She stated, however, that defendant told her he "was not interested." Leuallen then went to the backyard to take photographs of the premises.

Leuallen further testified that later that morning, one of the officers on the scene told her defendant had asked to speak with her. Leuallen walked back to defendant and again asked if he wanted to release the dogs. She gave defendant a form that, if signed, would allow the SPCA to take possession of the dogs. Defendant signed the form. Leuallen testified that she did not know whether anyone read Miranda warnings to defendant and that she never read Miranda warnings during her interactions with defendant.

The judge found defendant's statement to O'Rourke that he had "nothing to say" could "undoubtedly . . . represent an invocation of [his] right to remain silent." The judge found, however, that Leuallen's conversations with defendant were not an "interrogation."[2] The judge reasoned that Leuallen "did not

---

[2] The State does not dispute that Leuallen was required to comply with the requirements generally imposed on law enforcement officers and their agents under Miranda and the court decisions interpreting that decision.

interrogate the defendant in a fashion that was meant to elicit incriminating evidence."

On appeal, defendant argues the judge applied the wrong legal standard in determining whether he had been interrogated. He contends the judge failed to address whether Leuallen knew or should have known her questions were "reasonably likely to elicit an incriminating response."

When reviewing the trial court's decision to grant or deny a motion to suppress evidence allegedly obtained in violation of a defendant's Miranda rights, this court must defer to the trial court's findings of fact if the findings are "supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Gamble, 218 N.J. 412, 424 (2014)). Our deference is especially appropriate when the trial court's findings have been "substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)) (alteration in original). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to special deference." Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

"Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 265-66 (quoting Miranda, 384 U.S. at 444). Here, the record shows that defendant was handcuffed and seated in the back of a police cruiser when Leuallen questioned him. Thus, defendant was in custody when he spoke with Leuallen. As the trial court found, however, Leuallen's conversations with defendant did not constitute an interrogation. Leuallen had no reason to believe her conversation with defendant would elicit any incriminating response. See Hubbard, 222 N.J. at 267.

As the judge stated in his opinion, Leuallen "was dispatched to the scene in order to take custody of the dogs," and she did not question defendant in order to "elicit incriminating evidence." Leuallen merely asked defendant if he would sign a document authorizing her to take control of the dogs so that they would not languish in a shelter for an extended period of time.

The judge further found that even assuming Leuallen's conversations with defendant were a custodial interrogation, O'Rourke earlier had advised defendant of his Miranda rights, when O'Rourke detained defendant and placed him in the Troopers' police cruiser. Defendant essentially invoked his Miranda

12

rights when he told O'Rourke he had nothing to say. In addition, defendant initially told Leuallen he did not want to sign the documents releasing the dogs.

However, as we have explained, defendant thereafter told one of the Troopers on the scene that he wanted to speak with Leuallen. When she returned to the police cruiser, defendant indicated that he wanted to release the dogs to the SPCA. Defendant signed the SPCA forms, thereby acknowledging that he owned, possessed, or kept the dogs found on the property. The judge found that "defendant was not coerced or threatened" and "[h]e had an opportunity to think about his actions and initiated the conversation which led to his signature."

We are convinced that the judge's finding that defendant knowingly, intelligently, and voluntarily waived his Miranda rights when he spoke with Leuallen and signed the form acknowledging that he owned, possessed, or kept the dogs is "supported by sufficient evidence in the record." Hubbard, 222 N.J. at 262. We therefore conclude that the judge did not err by denying defendant's motion to suppress his statements to Leuallen and the form he signed.

Defendant further argues that the judge erred by denying his motion to suppress the recorded statement he provided to the NJSP Troopers after he was transported to the NJSP barracks. At the barracks, O'Rourke and another detective again read defendant his Miranda rights. Defendant acknowledged

that he understood these rights. He signed the waiver form and provided a recorded statement. In that statement, defendant essentially admitted he owned the dogs found at the King Drive property when he referred to them as "my dogs."

On appeal, defendant argues that because Leuallen failed to "scrupulously" honor his decision to remain silent, the trial court should have suppressed the recorded statement he provided at NJSP barracks. He contends the second statement was the "fruit of the poisonous tree." We cannot agree.

As stated previously, the record supports the judge's decision that defendant knowingly, intelligently, and voluntarily waived his Miranda rights when he initiated his second conversation with Leuallen and signed the form releasing the dogs found on the property. Thus, the statements made to Leuallen and in the form were not obtained in violation of defendant's Miranda rights.

Furthermore, under the "fruit of the poisonous tree" doctrine, the admissibility of a second incriminating statement depends on whether the State established that the later statement "was not the product of the first" statement "or that the 'taint' of the first statement was attenuated." State v. Hartley, 103 N.J. 252, 283 (1986). In addressing that issue, the court should consider "the time between confessions, any intervening circumstances, whether there was a

14

change in place, whether defendant received an adequate warning of his rights, whether the defendant initiated the second confession, . . . and the 'purpose and flagrancy of police misconduct.'" Ibid. (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975); Robinson v. Percy, 738 F.2d 214, 221 (7th Cir. 1984); United States v. Wauneka, 770 F.2d 1434 (9th Cir. 1985)).

Here, the judge did not address whether the statement defendant provided at the NJSP barracks should be suppressed pursuant to the "fruit of the poisonous tree" doctrine. It appears that defendant did not raise this argument in the trial court, although he argues otherwise on appeal. In any event, we are convinced that defendant's statement at the NJSP barracks "was not the product of the first" statement to Leuallen. Hartley, 103 N.J. at 283.

As we stated previously, defendant made his statements to Leuallen outside the King Drive property in the morning, after O'Rourke informed defendant of his Miranda rights, and he voluntarily chose to waive those rights and speak with Leuallen. Defendant provided his recorded statement early in the afternoon at the NJSP barracks, after he was again informed of his Miranda rights and waived them. At the barracks, the Troopers did not ask defendant if he owned the dogs, but he referred to them as "my dogs."

Thus, defendant's recorded statement at the NJSP barracks was a separate and independent statement, which defendant provided after the Troopers informed him of his <u>Miranda</u> rights and he waived those rights. Moreover, the recorded statement was not "fruit" of any previous violation of defendant's constitutional rights. We therefore conclude the judge did not err by denying the motion to suppress that statement.

Defendant's other arguments on these issues lack sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

### III.

Next, defendant argues that the assistant prosecutor made certain improper statements during her summation. The prosecutor said:

> What testimony at all did you hear that anyone else lived at [the] King Drive [property]? Absolutely none. You heard nothing from the statement. You heard nothing from any of the testimony that there was any proof that anyone else lived at [the] King Drive [property].

On appeal, defendant argues that the assistant prosecutor impermissibly shifted the burden to defendant to prove that the contraband seized at the King Drive property belonged to someone else. He asserts that "[t]he clear implication of the prosecutor's argument was that the jury could convict [him] because he failed to produce evidence of third party guilt." We disagree.

16

In her summation, the prosecutor essentially asked the jury to focus its attention on the evidence that the State had presented at trial. The prosecutor emphasized there was no evidence anyone lived with defendant in the home on King Drive and no evidence that would allow the jury to infer that someone other than defendant possessed the CDS found on the premises. The prosecutor's remarks were fair comment on the evidence presented at trial.

Indeed, O'Rourke had testified that when he questioned defendant at the NJSP barracks, defendant said he knew nothing about the CDS found in the King Drive residence. Moreover, in his statement, defendant did not identify any persons who resided in the home with him, and he did not provide information about any persons who spent time at the house. Defendant claimed he did not know how the CDS came to be found in his kitchen.

On appeal, defendant also argues that the prosecutor impermissibly penalized him for not testifying at trial. He argues that the prosecutor "suggested that if [he] were innocent he would have testified and provided the names of family members who had access to the family house and the drugs that it contained." He maintains he has a constitutional right to refrain from making self-incriminating statements, and argues that the prosecutor used the exercise of that right "as a sword against him." Again, we disagree.

"[T]he State cannot use a defendant's failure to testify as evidence of his [or her] guilt," nor "can the State tell the jury to infer a defendant's guilt from a witness's refusal to testify." State v. Cagno, 211 N.J. 488, 528 (2012) (citing Griffin v. California, 380 U.S. 609, 613-15 (1965)). "[A] prosecutor cannot comment negatively on a defendant's refusal to testify because that would be urging the jury to do something it 'is not permitted to do'—draw a negative inference from a defendant's silence." State v. Feal, 194 N.J. 293, 305 (2008) (quoting Portuondo v. Agard, 529 U.S. 61, 67 (2000)).

Here, however, the prosecutor did not expressly comment on defendant's decision to not testify, nor did she ask the jury to infer defendant was guilty based on his refusal to testify. As we stated previously, the prosecutor merely commented on the evidence admitted at trial, which supported the conclusion that no one other than defendant possessed the CDS found in the King Drive residence.

Furthermore, even if the prosecutor's comments were improper, they do not warrant reversal of defendant's convictions. "[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437-38 (2007) (quoting State v. Timmendequas, 161 N.J. 515, 575-76

(1999)). To warrant a new trial on this basis, the prosecutor's conduct must be "clearly and unmistakably improper" and "must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Id. at 438 (citing State v. Papasavvas, 163 N.J. 565, 625 (2000)).

Here, defendant did not object to the prosecutor's remarks when they were made. Generally, if the defendant does not make a timely objection to a prosecutor's improper remarks, the court will not consider them to be prejudicial. State v. Frost, 158 N.J. 76, 83 (1999). Without an objection, one may assume the defendant did not consider the comments to be prejudicial. Id. at 84.

In this case, the State presented sufficient evidence for the jury to find beyond a reasonable doubt that defendant possessed the CDS found on the King Drive property. Moreover, the trial judge instructed the jury that defendant had elected not to testify, and that defendant had a constitutional right not to testify. The judge also told the jury it "must not consider for any purpose or in any manner in arriving at [a] verdict the fact that the [d]efendant did not testify," as required by State v. Burns, 192 N.J. 312, 333 (2007). We must presume the jury followed the judge's instructions. State v. Loftin, 146 N.J. 295, 390 (1996).

Thus, even if the prosecutor's remarks were improper, they did not "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Wakefield, 190 N.J. at 438. Moreover, there is no indication that the prosecutor's remarks led the jury to a result it would not otherwise have reached, based on the evidence presented at trial. We therefore reject defendant's contention that the prosecutor's remarks deprived him of a fair trial.

IV.

Defendant also argues that the trial judge erred by permitting Leuallen to provide the jury with what he claims were highly prejudicial expert opinions, when she was not qualified as an expert. He contends that because the State relied on Leuallen's testimony to prove he owned, possessed, or kept live animals for fighting or baiting, as charged in count seven in the indictment, his conviction on that count should be reversed and that charge remanded for a new trial.

The record shows that before Leuallen testified, defense counsel objected to her testimony, and the judge conducted a Rule 104 hearing. See N.J.R.E. 104. At the hearing, Leuallen testified that she is a certified humane law enforcement agent, employed by the Cumberland County SPCA. She explained that as such,

she is responsible for enforcing New Jersey's criminal statutes governing cruelty and neglect of animals. Leuallen stated that she has completed training at the Bergen County Police Academy, where she learned how to investigate suspected dog-fighting.

Leuallen further testified that she had been trained to look for particular types of wounds on the animals and she had become familiar with homemade medical supplies. She also had become familiar with devices that are used to strengthen and condition dogs and learned how these devices worked. She testified that she has investigated several allegations of dog-fighting.

The judge ruled the State could present Leuallen as a lay witness, but she would not be qualified as an expert. The judge also ruled the State could not elicit from Leuallen any opinions on the issue of whether she believed defendant used the dogs for fighting.

Leuallen thereafter testified before the jury. She stated that when she arrived at the King Drive property, she spoke with the NJSP Troopers who were at the scene. She then proceeded to the backyard, where she observed six pit bull dogs in a pen. She said one of the adult dogs was tied to an "excessively heavy chain," and she observed various other devices in the backyard.

Leuallen saw a "dog walker" behind a shed, and she explained that this device "is used for conditioning." She stated that a person will strap a dog to the device and encourage it to "go around and around" while carrying weights to increase the dog's "endurance."

Leuallen observed a "spring pull," which consists of "a tire hanging in a tree which also is used to encourage a dog to jump and grab hold" to "strengthen its jaws." She saw a "slatmill" in the shed, which is a type of treadmill used to train dogs that "makes the dog just keep going and running." She also saw what appeared to be "blood splatter" underneath the slatmill.

Leuallen further testified that she observed a male dog with injuries, including "a few older injuries, a lot of puncture marks," and "[w]ounds to the face and the ear." A female dog also had injuries, which included "some old healed wounds and some fresher, healing wounds." Leuallen said the dog's chest and front legs were covered with a colored spray. She described the spray as a type of "wound care spray."

On appeal, defendant argues that Leuallen's testimony concerning the dog-training devices and injuries was essentially expert testimony that exceeded the ken of the average juror. Defendant also argues that Leuallen's testimony on these issues exceeded the bounds of permissible lay witness opinion testimony.

22

He contends the State was required to qualify Leuallen as an expert before eliciting her testimony about the dog-training devices, blood splatter, and dog wounds.

Opinion testimony by persons who are not qualified as experts is governed by Rule 701, which provides:

> If a witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness'[s] testimony or in determining a fact in issue.
>
> [N.J.R.E. 701].

Rule 701 thus requires that the lay witness's opinion must be based on the witness's "perception," and any such perception must "rest[] on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011) (citations omitted). The rule further requires that the lay witness's opinion testimony "assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." Id. at 458.

On the other hand, expert testimony is governed by Rule 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or

> to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
>
> [N.J.R.E. 702].

Rule 702 thus requires that expert testimony be based on a witness's specialized knowledge and it must assist the jurors understand "subject matter that is beyond the ken of the average juror." State v. Kelly, 97 N.J. 178, 208 (1984).

We are convinced that the judge erred by allowing Leuallen to testify as to the uses of the dog-training devices she observed at the King Drive property. Leuallen was not qualified as an expert, and her opinions regarding the uses of the devices were expert testimony on technical matters which are "beyond the ken of the average juror." Kelly, 97 N.J. at 208. These opinions also exceeded the limits on lay opinion testimony because they were based on Leuallen's "training, education and experience—not [her] 'own senses,' perceptions and observations." State v. Hyman, 451 N.J. Super. 429, 437 (App. Div. 2017) (citing McLean, 205 N.J. at 456).

We conclude, however, that the judge's error in allowing Leuallen to testify about the purposes of the dog-training devices was harmless. The erroneous admission of evidence may be considered harmless unless the error was clearly capable of producing an unjust result. R. 2:10-2. The potential for

24

an unjust result "must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Lazo, 209 N.J. 9, 26 (2012) (quoting State v. R.B., 183 N.J. 308, 330 (2005) (alterations in original)).

Leuallen's testimony on the uses of the dog-training devices was not critical to the jury's verdict on count seven because the State presented more than enough other evidence from which the jury could find that defendant owned, possessed, or kept the dogs for the purpose of fighting or baiting, in violation of N.J.S.A. 4:22-24(e). Dr. Granato was qualified as an expert, and she testified the dogs had wounds that were "typical" of injuries sustained during fighting. In addition, O'Rourke said he observed scrapes and scratches on the dogs' bodies. Moreover, Leuallen testified that she observed wounds on the dogs and what appeared to be "blood splatter" on a training device found on the property.

We conclude the erroneous admission of Leuallen's testimony on the purposes of the dog-training devices was harmless and does not warrant reversal of defendant's conviction on count seven.

V.

Defendant argues the trial judge erred by denying his motion to compel the State to disclose the identity of the CI. As we noted previously, the CI informed O'Rourke that defendant was engaged in the unlawful distribution of a CDS at the King Drive property.

N.J.R.E. 516, known as the "informant's privilege," permits the State to withhold a CI's identity from a criminal defendant "unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his [or her] identity is essential to assure a fair determination of the issues." State v. Hernandez, 225 N.J. 451, 467 (2016) (citing N.J.R.E. 516).

A court may find that disclosure of an informant's identity is essential to assure "a fair determination of the issues" when: (1) the informant "is an essential witness on a basic issue in the case," (2) the informant "is an active participant in the crime for which the defendant is on trial," (3) the criminal defendant "reasonably assert[s] the defense of entrapment," or (4) "when fundamental principles of fairness to the accused mandate disclosure." State v. Florez, 134 N.J. 570, 579 (1994) (citing State v. Milligan, 71 N.J. 373, 383-84 (1976)). "Without a strong showing of need, courts will generally deny a request for disclosure." Id. at 578.

In Milligan, the Court determined the State need not disclose a CI's identity when the CI's role in the investigation was limited to introducing the police to the defendant's criminal activities. 71 N.J. at 388-89. The Court observed that a CI's role is "far less significant" to a criminal investigation when he or she is not involved in the particular transaction that serves as the basis for the criminal charges brought against the defendant. Id. at 390.

Here, the trial judge concluded that defendant failed to establish that disclosure of the CI's identity was required to assure a fair determination of the issue to be tried. The judge noted that the charges against defendant stemmed from his possession of and intent to distribute cocaine, and not from the transactions defendant engaged in with the CI. There is sufficient credible evidence in the record to support the judge's decision.

As we stated previously, the CI informed O'Rourke and the NJSP of defendant's criminal activities, specifically his distribution of cocaine from the residence on King Drive. O'Rourke identified defendant as the current resident at that address. O'Rourke showed the CI defendant's photograph, and the CI identified defendant as the person involved in the distribution of a CDS. O'Rourke then arranged for the CI to make two controlled purchases of a CDS from defendant at the King Drive residence.

O'Rourke detailed these purchases in the affidavit he submitted to the court in support of the application to search the King Drive property. After obtaining the search warrant, the NJSP executed the warrant, arrested defendant, and charged him with two counts of possession of a CDS with the intent to distribute, N.J.S.A. 2C:35-5(b)(2) and (3), and two counts of possession of a CDS, N.J.S.A. 2C:35-10(a)(1), among other offenses.

As the trial court found, the charged offenses did not stem from the two controlled drug purchases involving the CI or any other transaction the CI had engaged in directly. The charges at issue arose from defendant's possession of cocaine and his intent to distribute the same. Thus, the CI was not "an active participant in the crime for which the defendant [was] on trial." Florez, 134 N.J. at 579 (citing Milligan, 71 N.J. at 383-84).

Moreover, nothing in the record shows that the CI was "an essential witness on a basic issue in the case," that defendant "reasonably assert[ed] the defense of entrapment," or that "fundamental principles of fairness to the accused mandate[d] disclosure" of the CI's identity. Ibid. (citing Milligan, 71 N.J. at 383-84). There also is no evidence that shows the CI's identity has previously been disclosed. Hernandez, 225 N.J. at 467 (citing N.J.R.E. 516).

We conclude the trial court did not err in denying the motion to compel disclosure of the CI's identity.

VI.

Defendant further argues that the trial judge erred in his instructions on count one, in which defendant was charged with possessing a CDS with the intent to distribute, in violation of N.J.S.A. 2C:35-5(b)(2). In his instructions, the judge noted that N.J.S.A. 2C:35-5(b)(2) provides that "it shall be unlawful for any person knowingly or purposely to possess or have under his control with the intent to distribute a [CDS]."

The judge stated, "[c]ocaine is a dangerous substance prohibited by statute." The judge explained the elements the State had to establish to prove that defendant committed this offense. The judge stated:

> Number one S-20 in evidence is cocaine. Number two, the [d]efendant possessed or had under his control S-20 in evidence. Number three, the [d]efendant when he possessed or had under his control S-20 in evidence had the intent to distribute S-20 in evidence. Four, that the [d]efendant acted knowingly or purposely in possessing or having under his control with intent to distribute S-20 in evidence.

The judge added that, "[i]n regard to the third element that the [d]efendant had the intent to distribute S-20 in evidence, distribute means the transfer[,] actual,

constructive <u>or attempted</u> from one person to another of a controlled dangerous substance."  (Emphasis added).

On appeal, defendant argues that the judge erred by using the word "attempted" in his discussion of the proof that could be presented to show an intent to distribute the CDS.  He argues that the judge erred by failing to provide the jury with any guidance on the law of intent to distribute CDS.

We note, however, that defendant did not object to the instruction. Therefore, defendant must establish that the judge's charge "qualifies as plain error[.]"  <u>State v. R.B.</u>, 183 N.J. 308, 321 (2005) (quoting <u>State v. Hock</u>, 54 N.J. 526, 538 (1969)).  To constitute plain error, it must be one "clearly capable of producing an unjust result."  <u>R.B.</u>, 183 N.J. at 323 (quoting <u>State v. Spruell</u>, 121 N.J. 32, 42 (1990)).

When evaluating a court's jury charge, an appellate court must "examine the entire charge to see whether the jury was misinformed as to the controlling law."  <u>R.B.</u>, 183 N.J. at 324 (quoting <u>State v. Hipplewith</u>, 33 N.J. 300, 317 (1960)). "The test, therefore, is whether the charge <u>in its entirety</u> was ambiguous or misleading."  <u>Ibid.</u> (quoting <u>Hipplewith</u>, 33 N.J. at 317) (emphasis added).

We note that the judge's instruction regarding the charge under N.J.S.A. 2C:35-5(b)(2) was entirely consistent with the model jury instructions.  <u>See</u>

Model Jury Charges (Criminal), "Possession of a Controlled Dangerous Substance with Intent to Distribute, (N.J.S.A. 2C:35-5)" (rev. June 8, 2015). Moreover, the inclusion of the concept of "attempt" in the instruction did not render the charge on count one ambiguous or misleading. A jury could reasonably find that an individual "intended" to distribute the CDS if he or she "attempted" to do so.

Furthermore, as the State notes, in this case, the issue of attempt was irrelevant because the State never proceeded on that theory. The State presented evidence, which showed defendant was engaged in the actual distribution of CDS, not an attempt to do so. The State also presented evidence showing defendant possessed the CDS, as well as drug-distribution tools, a police scanner, and cash.

Thus, the judge correctly instructed the jury on the applicable law, and the judge's failure to explain the concept of criminal attempt was not erroneous, let alone an error "clearly capable of producing an unjust result." R.B., 183 N.J. at 323 (quoting Spruell, 121 N.J. at 42).

## VII.

Defendant also argues that the State violated his right to be free from unreasonable searches and seizures, as guaranteed by the United States

Constitution and the Constitution of the State of New Jersey. He contends he was entitled to a hearing pursuant to Franks, because the affidavit that the NJSP submitted to the judge in support of the search warrant application contained a material misrepresentation of fact. He also argues that the State failed to establish probable cause for the issuance of the search warrant.

The record shows that, in the affidavit submitted in support of the warrant, O'Rourke stated that defendant had been arrested seven times, and four of those arrests resulted in felony convictions. O'Rourke said that defendant had been convicted of possessing a weapon. He asserted that based on his training and experience, he knew that persons who engage in the sale of a CDS "often possess weapons for the purpose of protecting themselves[.]"

On appeal, defendant asserts he had never been convicted of a weapons offense. He claims that O'Rourke knew or should have known his affidavit contained a material misrepresentation of fact. He therefore contends the judge should have granted his application for a Franks hearing so that he could challenge the veracity of the application.

In his opinion denying defendant's motion for a Franks hearing, the judge found that defendant failed to establish that the affidavit contained a material misstatement, which was made with "deliberate falsehood or reckless disregard

for the truth."  We review a trial judge's decision on whether to grant a <u>Franks</u> hearing for an abuse of discretion.  <u>State v. Broom-Smith</u>, 406 N.J. Super. 228, 239 (App. Div. 2009).

In order to obtain a <u>Franks</u> hearing on the veracity of a search warrant application, a defendant must make "a substantial preliminary showing" that the application contains a material misstatement of fact, which was "made knowingly or with reckless disregard for the truth[.]"  <u>State v. Howery</u>, 80 N.J. 563, 566 (1979) (citing <u>Franks</u>, 438 U.S. at 155-56).  A misstatement in an affidavit submitted in support of a search warrant application is "material" if the affidavit "no longer contains facts sufficient to establish probable cause" in its absence.  <u>Id.</u> at 568 (citing <u>Franks</u>, 438 U.S. at 171).

When seeking a <u>Franks</u> hearing, the defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the [affidavit] that are claimed to be untrue."  <u>Id.</u> at 567 (citing <u>Franks</u>, 438 U.S. at 171).  "These allegations should be supported by an offer of proof including reliable statements by witnesses."  <u>Ibid.</u> (citing <u>Franks</u>, 438 U.S. at 171).

Here, the record supports the trial court's determination that defendant failed to establish that O'Rourke's affidavit contained a material misstatement of

fact. O'Rourke's assertion that defendant previously was convicted of a weapons offense was not material to the application because the other information in the affidavit was sufficient to establish probable cause. Moreover, defendant failed to show that O'Rourke made the statement with "deliberate falsehood or reckless disregard for the truth."

We also reject defendant's contention that the affidavit failed to establish probable cause. A search executed pursuant to a warrant is "presumptively valid" and a defendant who challenges that warrant must prove that the State lacked probable cause for the warrant. State v. Boone, 232 N.J. 417, 427 (2017).

On appeal, we "accord substantial deference" to the judge's decision to issue the warrant. Ibid. (citing State v. Jones, 179 N.J. 377, 388 (2004)). We must consider the "totality of the circumstances" and uphold the judge's decision if the probable cause determination rests on adequate facts. Ibid. (citing Jones, 179 N.J. at 388-89).

Defendant argues that the affidavit was deficient because it included information that the CI provided, but failed to include facts establishing that the information was reliable. Defendant contends the NJSP relied exclusively on its "untested" CI but failed to corroborate his or her assertions of illegal conduct.

We are convinced defendant's argument on this issue lacks sufficient merit to warrant extended comment in a written opinion. R. 2:11-3(e). We note, however, that in seeking the search warrant, the NJSP did not rely exclusively on the information that the CI provided.

As O'Rourke explained in the affidavit, he independently corroborated the CI's tip when the CI made two controlled purchases of a CDS from defendant at the King Drive residence. On both occasions, the officers observed the CI enter the residence and emerge minutes later with a substance.

According to O'Rourke, the officers maintained "[c]onstant visual contact" on the CI during both transactions. In addition, after both purchases, the officers tested the substances, which were positive for cocaine. O'Rourke also researched defendant's criminal history, which revealed defendant had been previously convicted for offenses involving a CDS.

Simply put, the affidavit submitted to the judge in support of the application contained sufficient facts to establish probable cause defendant was engaged in criminal activity. We therefore reject defendant's contention that the trial court erred by denying his motion to suppress the evidence obtained in the execution of the search warrant.

VIII.

A-5221-16T4

Defendant argues that his sentence is excessive. As we noted previously, the trial judge sentenced defendant to an aggregate term of twenty years of incarceration, with seven years of parole ineligibility. He contends the judge should not have sentenced him to a prison term that exceeds ten years.

We review the trial court's sentencing decision under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the trial judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors.

On appeal, defendant argues that the judge erred by finding aggravating factor three based on his convictions in this case and his prior criminal record. He contends a psychological risk assessment or evidence other than his criminal record was required to support the judge's finding that there was a risk that he will commit another offense. We disagree.

We are convinced that the record supports the judge's finding of aggravating factor three. As the judge noted, defendant had been convicted of similar drug crimes in the past, served time in prison for those convictions, and had recently been convicted for tampering with evidence. The judge stated, "when the defendant is not incarcerated, he reoffends."

The judge's finding is supported by the pre-sentence report, which indicates that as an adult, defendant has four prior convictions for indictable offenses, which include a 2004 conviction of possession of a CDS for which defendant was sentenced to a term of incarceration in State prison. We reject defendant's contention that the judge could not find aggravating factor three without a psychological risk assessment or additional evidence.

Defendant further argues that the judge engaged in what he calls "double-counting" by relying upon his criminal record to find aggravating factors three and nine. Again, we disagree. Defendant's criminal record not only supports

aggravating factor three, it also supports the judge's finding that there is a risk that defendant will commit another offense, and a need to deter defendant and others from violating the law.

Defendant also contends the judge erred by failing to find mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12) ("willingness of the defendant to cooperate with law enforcement authorities"). He asserts he cooperated with law enforcement by signing the release to allow the SPCA to take possession of the dogs, and also consented to a search of his vehicle.

This is not, however, the sort of cooperation that warrants a finding of mitigating factor twelve. See State v. Read, 397 N.J. Super. 598, 613 (App. Div. 2008) (questioning whether a defendant's confession warrants a finding of mitigating factor twelve because the defendant did not identify another perpetrator or help law enforcement solve other crimes).

In addition, defendant contends the judge erred by ordering that the five-year sentence on count seven be served consecutively to the fifteen-year prison term on count one. We disagree.

In State v. Yarbough, 100 N.J. 627, 643-44 (1985), the Court established guidelines to assist trial judges in deciding whether to impose concurrent or consecutive sentences:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;

> (b) the crimes involved separate acts of violence or threats of violence;

> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

> (d) any of the crimes involved multiple victims;

> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple

A-5221-16T4

offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.[3]

[Ibid. (footnote omitted).]

At sentencing, the trial judge provided a thorough statement of reasons supporting his decision to impose a consecutive sentence on count seven. The judge noted that the offense involving ownership, possession, or keeping the dogs for fighting or baiting was not related to the drug-distribution charges. The judge found that "[t]hey are clearly separate crimes and separate offenses," and "their objectives were clearly separate, and distinct, and unrelated." The judge also noted that "defendant is not entitled to any free crimes."

We conclude that the judge complied with the sentencing guidelines and there is sufficient evidence to support the findings regarding the aggravating and mitigating factors. We also conclude that the record supports the judge's decision to sentence defendant to a consecutive term on count seven. We are convinced defendant's sentence is a reasonable exercise of the judge's sentencing discretion and it is not excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] The sixth Yarbough factor has since been abrogated by statute. See N.J.S.A. 2C:44-5(a) ("There shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses.").

A-5221-16T4